**GRIFFIN, INC.**

v.

**James H. TULLY, Jr., et al.**

**Civ. A. No. 75–104.**

United States District Court,
D. Vermont.

Oct. 20, 1975.

Probable Jurisdiction Noted Feb. 23, 1976.
See 96 S.Ct. 1099.

Paul R. Wickes, Williams, Witten, Carter & Wickes, Bennington, Vt., for plaintiff.

Thomas P Zolezzi, Asst. Atty. Gen., Albany, N. Y., and Peter Joslin, Theriault & Joslin, Montpelier, Vt., for defendants.

Before OAKES, Circuit Judge, and HOLDEN and COFFRIN, District Judges.

COFFRIN, District Judge.

This case arises out of an attempt by various officials of the New York State Tax Commission and the Department of Taxation and Finance to require a Vermont corporation to collect New York Sales and Use Tax revenues.

## A. *Background*

Plaintiff is a Vermont corporation which operates a retail furniture business in Arlington, Vermont, about six miles from the New York-Vermont border. A substantial amount of plaintiff's total sales are made to out-of-state customers, and of this interstate business a substantial portion involves New York residents.

On February 21, 1973, an associate sales tax examiner from the New York Sales Tax Bureau came to Griffin's store for the purpose of auditing plaintiff's books to establish a sales record which would then be the basis of an assessment of the New York sales and use taxes claimed to be owed by Griffin.[1] Plaintiff refused to allow an audit at that time. Matters rested there for more than two years, but on April 23, 1975, defendant Willey, a senior tax examiner, came to conduct an audit at the direction of defendants Tully, Koerner, and Manley who are members of the Tax Commission. Plaintiff again refused to allow an audit and served the complaint in this lawsuit at that time. Defendants subsequently issued a "Notice of Determination and Demand for Payment of Sales and Use Taxes Due" showing an amount of $218,085.37. The assessment was based on an estimate rather than any hard data concerning plaintiff's sales records. Subsequently, a second assessment in the amount of $298,580.59 was issued which superseded the original notice.[2]

Griffin seeks a declaratory judgment that any assessment, levy, or collection against it would violate the Commerce, Due Process, and Equal Protection clauses of the Constitution. Plaintiff also seeks permanent injunctive relief. After receiving the complaint, defendants filed a motion to dismiss on the ground that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. Plaintiff subsequently filed a motion for a preliminary injunction on May 30,

---

1. Defendants maintain that by reason of plaintiff's activities in New York State the plaintiff is a vendor as defined by section 1101(b)(8)(i) of the Tax Law. As such defendants claim Griffin is required to register, collect and remit sales taxes on sales of tangible personal property delivered in New York State, is personally liable for sales taxes not collected and remitted and must permit examination of its records. The duties of a vendor are found in sections 1105(a), 1105(c)(3), 1131(1), 1132(a), 1133(a), 1134 and 1135 of the Tax Law of the State of New York. For purposes of this opinion and order it is only necessary to note that defendants seek to impose collection of the New York Sales and Use Tax on plaintiff, a Vermont corporation, and plain-

tiff seeks to resist that effort. Accordingly, it is unnecessary to set forth the appropriate provisions of the statute in detail.

2. The original notice was issued on May 14, 1975. Under section 1138(a) of the Sales and Use Tax Law, a party has 90 days to apply to the Tax Commission for a hearing on the assessment. This period would have run out on August 11, 1975, however, the Commission cancelled the May 14, 1975 notice and issued a superseding notice on August 8, 1975. The new notice shows an assessment of $298,580.59. Thus plaintiff has not as yet lost his right to appeal to the Tax Commission, but the new assessment is larger by approximately $80,000.00.

1975 and in its memorandum requested that a three-judge court be convened. This court was convened, and the motions to dismiss and for a preliminary injunction were argued on August 1, 1975.

### B. Preliminary Matters

■■ It is clear that except for the possible application of section 1341 we would have jurisdiction of this matter. The complaint raises substantial federal questions arising under the Commerce clause and the fourteenth amendment. *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Plaintiff appears to have stated a claim based directly on the constitution and since there is more than $10,000 in controversy, we have jurisdiction under 28 U.S.C. § 1331(a). Additionally, 42 U.S.C. § 1983 provides a cause of action for deprivation of constitutional rights under color of state law and we also have jurisdiction under 28 U.S.C. § 1343(3).

■ A three-judge court is appropriate in this case because the complaint seeks to enjoin state officials from executing a state statute,[3] raises substantial constitutional questions,[4] and alleges a basis for injunctive relief.[5] *See Gonzales v. Automatic Employees Credit Union,* 419 U.S. 90, 94, 95 S.Ct. 289, 42 L. Ed.2d 249 (1974). Only a three-judge court has the authority to issue even an interlocutory injunction. 28 U.S.C. §

2281. Although a single judge can entertain a motion to dismiss for lack of subject matter jurisdiction, *Id.* at 100, 95 S.Ct. 289, it is certainly permissible for a three-judge court to do so, *Ammex-Champlain Corp. v. Gallman,* Civil Nos. 72–306, 72–310 (N.D.N.Y. Mar. 13, 1973), *aff'd* 414 U.S. 802, 94 S.Ct. 163, 38 L.Ed.2d 39 (1973), particularly where consolidation of the motions for hearing may save judicial time and energy.

### C. Motion to Dismiss

■ We turn first to defendants' motion to dismiss the complaint pursuant to 28 U.S.C. § 1341. Although by its terms section 1341 only forbids a district court to award injunctive relief, the policy considerations which underlie the statutory command preclude an award of declaratory relief as well. *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L. Ed. 1407 (1943). Clearly, if we lack the ability to grant Griffin the relief it seeks, the case must be dismissed. In that event, it would be unnecessary to reach the merits of plaintiff's motion for a preliminary injunction.

In support of their motion to dismiss defendants argue that there are two available remedies. The first is an administrative appeal to the Tax Commissioners and from there to the New York courts as set forth in section 1138 of the Sales and Use Tax Law.[6] The other

---

3. *Moody v. Flowers,* 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

4. *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973).

5. *Idlewild Bon Voyage Liquor Corp. v. Epstein,* 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

6. § 1138. Determination of tax
 (a) If a return required by this article is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the tax commission from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, purchases, rental paid, number of rooms, location, scale of

rents or charges, comparable rents or charges, type of accommodations and service, number of employees or other factors. Notice of such determination shall be given to the person liable for the collection or payment of the tax. Such determination shall finally and irrevocably fix the tax unless the person against whom it is assessed, within ninety days after giving of notice of such determination, shall apply to the tax commission for a hearing, or unless the tax commission of its own motion shall redetermine the same. After such hearing the tax commission shall give notice of its determination to the person against whom the tax is assessed. The determination of the tax commission shall be reviewable for error, illegality or unconstitutionality or any other reason

remedy is a declaratory judgment action under section 3001 of the New York Civil Practice Law and Rules (CPLR). We conclude, however, that neither is "plain, speedy and efficient" within the meaning of 28 U.S.C. § 1341.

### 1. *Administrative Appeal*

New York Sales and Use Tax Law section 1138 provides that a taxpayer may request an administrative review of the initial assessment in a proceeding before the Tax Commission. The Commission in turn may be reviewed by a CPLR article 78 proceeding. Article 78 review, however, requires that the taxpayer pay the tax or post a bond to stand for taxes, penalties and interest. Sales and Use Tax Law § 1138(a). This prerequisite to judicial review is a ma-

whatsoever by a proceeding under article seventy-eight of the civil practice law and rules if application therefor is made to the supreme court within four months after the giving of the notice of such determination. A proceeding under article seventy-eight of the civil practice law and rules shall not be instituted unless the amount of any tax sought to be reviewed, with penalties and interest thereof, if any, shall be first deposited with the tax commission and there shall be filed with the tax commission an undertaking, issued by a surety company authorized to transact business in this state and approved by the superintendent of insurance of this state as to solvency and responsibility, in such amount as a justice of the supreme court shall approve to the effect that if such proceeding be dismissed or the tax confirmed the petitioner will pay all costs and charges which may accrue in the prosecution of the proceeding, or at the option of the applicant such undertaking filed with the tax commission may be in a sum sufficient to cover the taxes, penalties and interest thereon stated in such determination plus the costs and charges which may accrue against it in the prosecution of the proceeding, in which event the applicant shall not be required to deposit such taxes, penalties and interest as a condition precedent to the application.

(b) If the tax commission believes that the collection of any tax will be jeopardized by delay it may determine the amount of such tax and assess the same, together with all interest and penalties provided by law, against any person liable therefor prior to the filing of his return and prior to the date when his return is required to be filed. The amount so determined shall become due and payable to the tax commission by the person against whom such a jeopardy assessment is made, as soon as notice thereof is given to him personally or by registered or certified mail. The provisions of subdivision (a) of this section shall apply to any such determination except to the extent that they may be inconsistent with the provisions of this subdivision. The tax commission may abate any jeopardy assess-

ment if it finds that jeopardy does not exist. The collection of any jeopardy assessment may be stayed by filing with the tax commission a bond issued by a surety company authorized to transact business in this state and approved by the superintendent of insurance as to solvency and responsibility, conditioned upon payment of the amount assessed and interest thereon, or any lesser amount to which such assessment may be reduced by the tax commission or by a proceeding under article seventy-eight of the civil practice law and rules as provided in subdivision (a), such payment to be made when the assessment or any such reduction thereof shall have become final and not subject to further review. If such a bond is filed and thereafter a proceeding under *article* seventy-eight is commenced as provided in subdivision (a), deposit of the taxes, penalties and interest assessed shall not be required as a condition precedent to the commencement of such proceeding. Where a jeopardy assessment is made, any *property seized for the collection of the* tax shall not be sold (1) until expiration of the time to apply for a hearing as provided in subdivision (a) of this section, and (2) if such application is timely filed, until the expiration of four months after the tax commission has given notice of its determination to the person against whom the assessment is made; provided, however, such property may be sold at any time if such person has failed to attend a hearing of which he has been duly notified, or if he consents to the sale, or if the tax commission determines that the expenses of conservation and maintenance will greatly reduce the net proceeds, or if the property is perishable.

(c) A person liable for collection or payment of tax (whether or not a determination assessing a tax pursuant to subdivision (a) of this section has been issued) shall be entitled to have a tax due finally and irrevocably fixed prior to the ninety-day period referred to in subdivision (a) of this section, by filing with the tax commission a signed statement in writing, in such form as the tax commission shall prescribe, consenting thereto.

jor hurdle in Griffin's case since plaintiff has been assessed a tax liability of $298,580.59, a figure it states is well beyond its ability to pay. Defendants point out, however, that this figure is only an estimate which might be substantially reduced upon audit. At this juncture we have no way of knowing what figure an audit would disclose. However, even if an audit would result in a lower assessment, plaintiff objects to having to submit to such a procedure at the hands of a state which it claims has no jurisdiction to conduct an audit in any event.

In order to assert its rights or test its claim, Griffin should not be obliged as a condition precedent to make a choice between paying an assessment or posting a bond in an admittedly arbitrary amount or turning over its books and records to a state whose authority it claims is invalid. *United States Steel Corp. v. Multistate Tax Commission*, 367 F.Supp. 107, 116 (S.D.N.Y.1973). Whether New York has the authority to require Griffin to collect the New York Sales and Use Tax involves questions of constitutional law, but there is no indication that the Commission is competent to determine constitutional issues.[7] The Tax Commission redetermines the tax after an initial assessment has been challenged. The redetermination then can be reviewed "for error, illegality or unconstitutionality or any other reason whatsoever . . ." by an article 78 proceeding. Sales and Use Tax Law § 1138(a). Since Griffin does not have to submit to an audit prior to having its constitutional claim heard and since the Tax Commission may be limited to reviewing the computation of tax without competence to resolve constitutional questions, plaintiff and defendants have reached an impasse.

Under the procedures laid down by section 1138 Griffin's first opportunity to air its constitutional claims may well be in an article 78 proceeding, but it is not clear that such judicial review would be available to plaintiff if it steadfastly refuses to submit to audit. Presumably, a hearing before the Tax Commission is a prerequisite to an article 78 proceeding, but if plaintiff refuses to submit to Tax Commission authority, then it may jeopardize its article 78 appeal rights. Under these circumstances refusing to allow inspection of books and records might be likened to a failure to exhaust administrative procedures prior to the right to appeal.

In addition to doubts concerning the adequacy of article 78 review, there is one practical consideration of the utmost significance. Even if judicial review is technically available for all issues, Griffin may be unable to present its arguments because of the prepayment or bond requirement. It is fair to assume that the initial assessment of $298,580.59 would remain unchanged since the Commission would be unable to revise or verify the preliminary estimate without examining Griffin's books and records. Since it is clear that Griffin is unable either to pay the present assessment or to post bond in that amount, the issue is whether the requirement that plaintiff post bond or prepay the tax plus penalties and interest is a condition which renders an article 78 proceeding inadequate for purposes of section 1341. The general rule is that a state may require a taxpayer to litigate from a refund posture even when he questions the validity of the tax itself. *Great Lakes Dredge & Dock Co. v. Huffman, supra* at 301, 63 S.Ct. 1070. This remedy may be harsh, but there is no indication that it violates due process. *Jackson v. Metropolitan Edison Co.*, 483 F.2d 754, 761 (3d Cir. 1973), *aff'd* 419 U.S. 345, 95 S.Ct. 449, 42 L. Ed.2d 477 (1974). But in some instances the assessment poses such a heavy burden that to deny equitable re-

---

7. Defendant argues that the Commission is competent to decide questions as to its own authority, but they have not cited any authority for this proposition.

lief is to deny judicial review entirely. *Denton v. City of Carrollton*, 235 F.2d 481, 485 (5th Cir. 1956). In such instances a federal court may award equitable relief.

Extraordinary circumstances are present in this case which bring Griffin within the exception to the general rule. New York officials have admitted that the assessment represents an estimate of a liability which is itself contingent on whether the tax may be constitutionally applied. Even if it is liable for some tax, plaintiff claims that this estimate is grossly inflated. Plaintiff should not have to prepay or post bond in an entirely arbitrary amount that may bear little relationship to any eventual liability. Second, the bond or prepayment requirement is a prohibitive barrier to an article 78 hearing because Griffin cannot raise the necessary funds by borrowing or otherwise. A bond is not available except at a premium nearly equal to its face value or unless fully supported by collateral. (Affidavits of Robert Dimke, John Lonergan). Finally, an assessment of this magnitude is clearly coercive in its effect. Griffin must carry the assessment on its books as a contingent liability which will severely hamper it in obtaining the credit it needs in the ordinary course of business. (Affidavits of Robert Dimke, Arthur Wickenden). If Griffin cannot carry on its affairs with this assessment outstanding, it must accede to the desires of the New York State officials or face the dire consequences customarily attendant upon a business which cannot meet its credit requirements.

In short, we have no assurance that New York courts would even entertain a suit seeking review of a final determination of tax liability where the taxpayer refused to submit to the Tax Commission's authority. Furthermore, the prepayment or bond requirement in effect denies article 78 review in this instance. Consequently, we are of the opinion that the administrative review procedure does not afford a "plain, speedy or efficient remedy."

### 2. *Declaratory Judgment*

Defendants claim that New York's CPLR § 3001 provides for a declaratory judgment remedy. They argue that Griffin could present its constitutional claims without having to submit to an audit, prepay the assessed tax, or post bond in that amount. There are several difficulties with this remedy, however, which lead us to conclude that it does not satisfy section 1341.

Section 1140 of the Sales and Use Tax Law provides:

> § 1140. REMEDIES EXCLUSIVE. —The remedies provided by sections eleven hundred thirty-eight and eleven hundred thirty-nine shall be *exclusive remedies* available to any person for the review of tax liability imposed by this article; and *no determination* or *proposed determination* of tax or determination on any application for refund shall be *enjoined* or *reviewed* by *an action for declaratory judgment*, an action for money had and received, *or by any action or proceeding other than a proceeding under article seventy-eight* of the civil practice law and rules. (Emphasis added).

While the language of section 1140 apparently forecloses any declaratory judgment remedy, defendants claim that the case law has substantially diffused the effect of this forceful statement. New York courts have held that a declaratory judgment action may be maintained despite statutory language making a review proceeding exclusive if the taxpayer challenges the tax as unconstitutional or inapplicable to his case. *Richfield Oil Corp. v. City of Syracuse*, 287 N.Y. 234, 239, 39 N.E.2d 219 (1942). The general rule stated in *Richfield* has been applied specifically to section 1140 by a lower appellate court. *Hospital Television Systems, Inc. v. New York State Tax Commission*, 41 A.D.2d 576, 339 N.Y.S.2d 603 (3d Dept. 1973). In addition, some federal cases have assumed that a declaratory judgment remedy was available in dismissing taxpayer actions for

injunctive relief on the grounds that an adequate state remedy existed. *Hickmann v. Wujick*, 488 F.2d 875, 876 (2d Cir. 1973) ; *Ammex-Champlain Corp. v. Gallman, supra.* Nevertheless there appears to be a contradiction between the plain language of section 1140 and the few cases we have found which cloaks this issue in some uncertainty.

 When there is uncertainty with regard to the adequacy of a state remedy, a federal court may retain jurisdiction and give appropriate relief. *Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 105–106, 65 S.Ct. 152, 89 L.Ed. 101 (1944). Clearly, if a remedy is entirely unavailable, it would be inadequate. Since it is not certain that a declaratory judgment is available in this instance, we cannot be sure that the remedy in question is adequate.

 But even if it were certain that section 3001 is available, a declaratory remedy standing alone may still be inadequate. *Spector Motor Co. v. Mc-Laughlin, supra.*[8] In *Ammex* the court ruled that the apparent inability of New York courts to give injunctive relief was not crucial, but there are important distinctions between *Ammex* and this case which lead us to the opposite conclusion. Ammex-Champlain sold cigarettes and liquor to travelers going from the United States to Canada. The corporation maintained sales offices and warehouses at various points on the New York side of the border. The warehouses were located so that one could only go into Canada after picking up one's merchandise. This unique physical arrangement gave rise to a claim that the sales were exempt from state tax under both the Commerce and Export-Import clauses of the Constitution. The important point is that the corporation was clearly present in New York State, and therefore it could expect to litigate in New York courts. But Griffin's contacts with New York are minimal.[9] For this reason it seems unfair to make Griffin litigate in an unfamiliar forum.[10]

8. Declaratory relief was available in *Spector* ; nevertheless the Supreme Court held that a federal court should retain jurisdiction of the suit in order to give appropriate equitable relief. A complicating factor in *Spector*, however, was the fact that there were undecided questions of state tax law which potentially could have disposed of the case in plaintiff's favor without reaching the constitutional claims. Since there was a declaratory judgment remedy where those questions could be decided, the Supreme Court instructed the district court to abstain while the parties litigated these matters in state court. Abstention would be improper in this case, however, because there is no indication that there are undecided questions under New York's tax law, and furthermore, the declaratory judgment remedy is not completely certain. *Township of Hillsborough v. Cromwell*, 326 U.S. 620, 629, 66 S.Ct. 445, 90 L.Ed. 358 (1946).

9. Plaintiff owns no realty and has no place of business in New York. It does not solicit business in New York through any sort of representative. Plaintiff does advertise in the media which serve the Albany-Schenectady-Troy region. This is the only metropolitan area within plaintiff's marketing area. Vermont based media do not cover all of plaintiff's Vermont marketing area so Grif-fin relies in part on New York newspapers, television channels, and radio stations whose coverage includes southwestern Vermont. In addition to advertising in New York media, Griffin also delivers merchandise to New York buyers in plaintiff's own trucks or occasionally by common carrier. Upon delivery, plaintiff's employees may assemble pieces of furniture. Occasionally employees return to "touch up" or repair minor defects. No charge is made for such services.

10. Plaintiff, a Vermont corporation, has never been and is not now registered or qualified or authorized to do business in New York State. We need not decide whether, despite this fact, it has sufficient contacts with the State of New York to subject its person to the jurisdictional power of the New York courts. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). But it is clear that in order to avail itself of either the section 1138—article 78 proceeding or section 3001 declaratory judgment remedy Griffin would have to submit itself to the jurisdiction of the New York courts and thereby deprive itself of any possibility of asserting a claim that it was not subject to such jurisdiction. It should not be forced to litigate in New York at the risk of losing the opportunity to raise this issue. A remedy can hardly be

Plaintiff's unfamiliarity with New York courts is a counterweight to the reasons for requiring a taxpayer to raise his objections to an assessment in the courts of the taxing state. This counterweight admonishes us to exact a somewhat higher degree of certainty regarding the adequacy of New York's declaratory judgment remedy than was appropriate in *Ammex*. But though a higher standard of certainty should obtain, we do not have the same basis for confidence regarding the availability of preliminary relief should the need arise. In *Ammex* the parties agreed that there would be no collection attempt pending a New York court's decision on the merits, but there is no such stipulation in this case. Defendants argue that preliminary injunctive relief would be available in New York courts, but we have reservations on this score as seemingly did the court in *Ammex*.

Accordingly, we hold that in the circumstances of this case New York's declaratory judgment remedy is neither so certainly available nor so clearly adequate as to preclude our jurisdiction to issue injunctive relief. Since neither of the remedies available to plaintiff in New York are "plain, speedy and efficient," we have the power to grant injunctive relief and this lawsuit need not be dismissed.

### D. *Motion for Preliminary Injunction*

■ We turn now to Griffin's motion for a preliminary injunction. In deciding whether to grant or deny preliminary relief the two primary considerations are plaintiff's chance of eventual success on the merits and the potential for irreparable injury if interlocutory relief is not granted. It is also important to balance the potential hardship to both plaintiff and defendants and to ascertain where the public interest lies. *New York Pathological and X-Ray Laboratories, Inc. v. Immigration and Naturalization Service,* 523 F.2d 79, at 81 (2d Cir. 1975).

### 1. *Irreparable Injury*

[17] Griffin may well suffer irreparable injury from New York collection attempt once the assessment becomes final. Griffin is vulnerable because it makes deliveries to New York purchasers in its own trucks. If plaintiff continues this practice the trucks and merchandise could be seized.[11] Seizures would disrupt business, frustrate customers, and result in loss of sales. Griffin's alternative would be to completely change its present mode of operation. New York may also attempt collection in Vermont by lawsuit and liens on property. In short, vigorous collection attempts could cripple and perhaps destroy Griffin's business.

Another potential injury stems from the fact that Griffin will be unable to contest the amount of its liability should we ultimately decide that New York does have the authority to require plaintiff to collect the tax. Griffin claims the current assessment is excessive, but section 1138 requires that anyone wishing to challenge an assessment must request a hearing before the Tax Commission within 90 days of notice. The assessment was issued on August 8, 1975. Unless the 90 day period is tolled, the time for requesting a hearing almost assuredly will have passed before we reach a decision on the merits.

Finally, the assessment will appear as a black mark on Griffin's balance sheet.

---

said to be "plain, speedy and efficient" if the only way a party can take advantage thereof is to abandon a valid right which it possesses.

11. Exhibit D(2) to plaintiff's motion for a preliminary injunction is a news release forwarded to plaintiff by defendant Maloney. The news release concerns roadblocks which were set at three bridges leading from New Jersey to Staten Island to discover shipments of household appliances, furniture and other merchandise trucked into New York from New Jersey by merchants who had not collected the New York sales tax. Although the news release does not indicate that any seizures occurred, it would appear that a roadblock could lead to a seizure.

Griffin must carry the assessment as a contingent liability which will substantially impair plaintiff's ability to secure the credit it needs in the ordinary course of business.

■ Griffin clearly needs preliminary relief to prevent it from suffering irreparable injury, and defendants will not be harmed by some delay. Although the court takes judicial notice of the fact that some state and municipal governments are currently hard-pressed to meet their financial obligations, collection of this assessment will not make the difference between financial stability and ruin.[12] On balance, Griffin deserves protection if it can show a likelihood of success on the merits.

### 2. Probability of Success on The Merits

■ New York seeks to hold a Vermont corporation responsible for the collection of New York's sales and use tax on furniture sales to New York residents. In Miller Bros. Co. v. Maryland, 347 U.S. 340, 344–345, 74 S.Ct. 535, 98 L.Ed. 744 (1954), Justice Jackson discussed a similar taxing scheme set up by the State of Maryland. The economic effect of holding Griffin liable for collection of the sales and use tax is to protect New York businesses by putting out-of-state retailers on the same footing as local merchants for sales to New York residents. But as distinguished from a direct tax on a sale, liability here arises only on the importation of the furniture into New York, an event which occurs after title has passed and of which Griffin may have no knowledge. Since the sale in Vermont establishes no link between Griffin and New York, the issue is whether Griffin's acts or course of dealing has subjected it to New York's taxing authority or has afforded New York jurisdiction to saddle Griffin with responsibility for tax collection. Due process requires some

minimum link between a state and the person, property, or transaction it seeks to tax.

■ Miller Bros. involved a situation almost identical to the one before us now. A Delaware furniture corporation operating in Wilmington made sales to Maryland residents. Customers sometimes took their purchases with them, but usually Miller Bros. delivered the items in its own trucks or by common carrier. The only difference of any colorable significance between Griffin's operation and those of the Delaware firm is that Miller Bros. advertised only in Wilmington newspapers, radio, and television while Griffin uses media based in the Albany-Schenectady-Troy region of New York. This difference is not important, however, since residents of Bennington County, Vermont, Griffin's primary marketing area, rely on New York media. Miller Bros. advertising reached Maryland and Delaware residents alike just as Griffin's reaches residents of New York and Vermont. The site of a broadcasting tower or a printing press should not be controlling. Neither Miller Bros. nor Griffin made a special appeal to out-of-state residents.

Because of the similarities, the Supreme Court's decision in Miller Bros. holding that Maryland had exceeded its authority is extremely persuasive precedent. Other cases which uphold a state's taxing power are distinguishable on their facts. In General Trading Co. v. Tax Commission, 322 U.S. 335, 64 S. Ct. 1028, 88 L.Ed. 1309 (1944), a corporation based in Minnesota sent traveling salesmen into Iowa to solicit orders for merchandise which the home office then sent to Iowa by common carrier or mail. Similarly, in Scripto v. Carson, 362 U.S. 207, 80 S.Ct. 619, 4 L.Ed.2d 660 (1960), a division of Scripto based in Atlanta solicited orders in Florida by using Florida residents as jobbers. Scripto assigned jobbers a specific territory and

12. In fact, upon oral argument counsel for the defendants indicated that the assessment against Griffin was brought about largely, if

not entirely, as the result of New York competitors' complaints to the Tax Department.

paid them on a commission basis. In *Miller Bros.* Justice Jackson distinguished *General Trading* on the ground that the subject corporation sent its sales representatives into the taxing state, a distinction we are inclined to follow in the case at hand.

Since Griffin has demonstrated a likelihood of success on the merits and on balance a need for interlocutory relief, a preliminary injunction will issue.

Accordingly, defendants' motion to dismiss is denied. Plaintiff's motion for a preliminary injunction is hereby granted. Defendants are temporarily enjoined from attempting to collect the tax assessed against plaintiff. Defendants are ordered to revoke the notice of assessment dated August 8, 1975 and hold further collection proceedings in abeyance pending a determination of this matter on the merits.