TULLY ET AL. *v.* GRIFFIN, INC.

No. 75–831.   Argued October 4, 1976—Decided November 9, 1976

*Thomas P. Zolezzi,* Assistant Attorney General of New York, argued the cause for appellants.   With him on the brief were *Louis J. Lefkowitz,* Attorney General, and *Ruth Kessler Toch,* Solicitor General.

*R. Paul Wickes* argued the cause for appellee.   With him on the brief was *John H. Williams II.*

MR. JUSTICE STEWART delivered the opinion of the Court.

The question in this case is whether New York provides a "plain, speedy and efficient" remedy to an out-of-state

corporation that seeks to challenge New York's assessment of sales taxes against it. The United States District Court for the District of Vermont held that New York does not provide such a remedy, and issued a preliminary injunction restraining the collection of the New York taxes. 404 F. Supp. 738. We noted probable jurisdiction of the appeal, 424 U. S. 907.

## I

The appellee, Griffin, Inc., is a Vermont corporation that operates a furniture store in Arlington, Vt., six miles from the New York-Vermont border. It advertises on radio and television and in newspapers that serve the Albany-Schenectady-Troy area of New York, and makes substantial sales at its place of business to customers from that State. It regularly delivers furniture to the New York buyers in its own trucks, and its employees also enter New York on occasion to repair furniture it has sold.

In February 1973, the New York Department of Taxation and Finance determined that Griffin was "doing business" in New York and thus was required to collect state and local sales taxes from its New York customers. The Department sent a tax examiner to Vermont to audit Griffin's records, but Griffin refused its consent. Little more happened until March 1975, when the Department reaffirmed its position and advised Griffin that another tax examiner would soon be dispatched for an audit. Griffin responded by filing suit in the United States District Court for the District of Vermont, alleging generally that any assessment, levy, or collection of sales taxes against it would violate the Commerce, Due Process, and Equal Protection Clauses of the United States Constitution, and asking for injunctive relief. A three-judge court was convened.

After Griffin again denied the tax examiner access to its records, the Department issued a "Notice of Determination and Demand for Payment of Sales and Use Taxes Due."

This assessment, by necessity only an estimate, demanded that Griffin pay $218,085.37 in back taxes, interest, and penalties.[1] Griffin moved in the federal court for a preliminary injunction to prevent steps from being taken to collect the taxes and to stay the running of the 90-day period in which it could contest the amount shown in the Notice of Determination.[2] The defendant New York tax officials filed a cross-motion to dismiss the action for lack of jurisdiction, claiming that suit was barred by the Tax Injunction Act, 28 U. S. C. § 1341, which provides:

> "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

The District Court rejected this defense, ruling that New York law does not provide Griffin "a plain, speedy and efficient remedy."

In reaching this conclusion, the federal court considered first the availability under New York law of direct review of the Notice of Determination. Under New York Tax Law § 1138 (a), a taxpayer has 90 days from the receipt of a notice of determination to apply for a hearing before the Tax Commission.[3] The Tax Commission's decision after the

---

[1] The Department later withdrew this initial Notice of Determination and issued another demanding payment of $298,580.59.

[2] See N. Y. Tax Law § 1138 (a) (McKinney 1975).

[3] New York Tax Law § 1138 (a) (McKinney 1975) provides:

"(a) If a return required by this article is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the tax commission from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, purchases, rental paid, number of rooms, location, scale of rents or charges, comparable rents or charges, type of accommodations and service, number of employees or other factors. Notice of such determination shall be given to the person liable for the collection or payment of the tax. Such determination shall finally and irrevocably fix the tax

hearing is judicially reviewable "for error, illegality or unconstitutionality or any other reason whatsoever" in a proceeding under Art. 78 of New York's Civil Practice Law and Rules.[4] Before a taxpayer may seek Art. 78 review, however, he must either prepay or post a bond for the amount of the assessment. The court found that Griffin lacked the means to do this. Although the assessment was only a gross estimate, the court assumed that the amount would not be changed unless Griffin submitted to an audit. It ruled that Griffin should not be required to "tur[n] over its books and records to a state whose authority it claims is invalid," and

---

unless the person against whom it is assessed, within ninety days after giving of notice of such determination, shall apply to the tax commission for a hearing, or unless the tax commission of its own motion shall redetermine the same. After such hearing the tax commission shall give notice of its determination to the person against whom the tax is assessed. The determination of the tax commission shall be reviewable for error, illegality or unconstitutionality or any other reason whatsoever by a proceeding under article seventy-eight of the civil practice law and rules if application therefor is made to the supreme court within four months after the giving of the notice of such determination. A proceeding under article seventy-eight of the civil practice law and rules shall not be instituted unless the amount of any tax sought to be reviewed, with·penalties and interest thereon, if any, shall be first deposited with the tax commission and there shall be filed with the tax commission an undertaking, issued by a surety company authorized to transact business in this state and approved by the superintendent of insurance of this state as to solvency and responsibility, in such amount as a justice of the supreme court shall approve to the effect that if such proceeding be dismissed or the tax confirmed the petitioner will pay all costs and charges which may accrue in the prosecution of the proceeding, or at the option of the applicant such undertaking filed with the tax commission may be in a sum sufficient to cover the taxes, penalties and interest thereon stated in such determination plus the costs and charges which may accrue against it in the prosecution of the proceeding, in which event the applicant shall not be required to deposit such taxes, penalties and interest as a condition precedent to the application."

[4] N. Y. Civ. Prac. Law, Art. 78, § 7801 et seq. (McKinney 1963).

further questioned whether a New York court would entertain an Art. 78 proceeding if Griffin refused to be audited. 404 F. Supp., at 743–745.

The District Court then considered the availability of declaratory relief under § 3001 of New York's Civil Practice Law and Rules.[5] It viewed this possible avenue of relief as insufficiently "plain, speedy and efficient" because N. Y. Tax Law § 1140 on its face seems to limit review of sales tax liability to the Art. 78 procedure discussed above.[6] Although the court took note of substantial federal and New York case law holding that New York's administrative review proceedings are not in fact exclusive where a plaintiff claims that a tax is unconstitutional, the court concluded that the issue was "cloak[ed] . . . in some uncertainty." Even if Griffin could get declaratory relief, the court held, its contacts with New York were so "minimal" that "it seems unfair to make Griffin litigate in an unfamiliar forum." Finally, the court expressed "reservations" about Griffin's ability to get a preliminary injunction pending a New York court's decision in a declaratory judgment suit. 404 F. Supp., at 745–747. On the basis of this reasoning the District Court granted Griffin preliminary injunctive relief.

---

[5] New York Civ. Prac. Law § 3001 (McKinney 1974) provides:

"The supreme court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. . . ."

[6] New York Law § 1140 (McKinney 1975) provides:

"The remedies provided by sections eleven hundred thirty-eight and eleven hundred thirty-nine shall be exclusive remedies available to any person for the review of tax liability imposed by this article; and no determination or proposed determination of tax or determination on any application for refund shall be enjoined or reviewed by any action for declaratory judgment, an action for money had and received, or by any action or proceeding other than a proceeding under article seventy-eight of the civil practice law and rules."

## II

A federal district court is under an equitable duty to refrain from interfering with a State's collection of its revenue except in cases where an asserted federal right might otherwise be lost. See *Hillsborough* v. *Cromwell,* 326 U. S. 620, 622–623; *Great Lakes Dredge & Dock Co.* v. *Huffman,* 319 U. S. 293, 297–299; *Matthews* v. *Rodgers,* 284 U. S. 521, 525–526. This policy of restraint has long been reflected and confirmed in the congressional command of 28 U. S. C. § 1341 that no injunction may issue against the collection of a state tax where state law provides a "plain, speedy and efficient remedy." As the Court has frequently had occasion to note, the statute has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations. "Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are the considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer—especially when the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax." *Great Lakes Dredge & Dock Co.* v. *Huffman, supra,* at 298. See also *Moe* v. *Salish & Kootenai Tribes,* 425 U. S. 463; *Hillsborough* v. *Cromwell, supra,* at 622–623; *Matthews* v. *Rodgers, supra,* at 525–526.

These principles do not lose their force, and a State's remedy does not become "inefficient," merely because a taxpayer must travel across a state line in order to resist or challenge the taxes sought to be imposed. If New York provides an otherwise adequate remedy, the mere fact that Griffin must go to New York to invoke it does not jeopardize its ability to assert its rights. To accept the District Court's holding that it would be "unfair" to make Griffin litigate in

New York would undermine much of the force of 28 U. S. C. § 1341.

We turn then to the basic inquiry—whether under New York law there is a "plain, speedy and efficient" way for Griffin to press its constitutional claims while preserving the right to challenge the amount of tax due. This Court answered the first part of that question by its summary judgment of affirmance three years ago in *Ammex Warehouse Co. v. Gallman,* 414 U. S. 802. In that case, the New York Tax Commission had assessed state alcoholic beverage, tobacco, and sales taxes against two New York companies that sold cigarettes and liquor to persons about to leave the State to enter Canada. The companies brought suit in Federal District Court, claiming that the assessment of the taxes against them violated the Commerce and Import-Export Clauses of the Constitution. The three-judge District Court held that 28 U. S. C. § 1341 required dismissal of the action. *Ammex-Champlain Corp.* v. *Gallman,* 72 Civ. 306 (NDNY, Mar. 15, 1973) (unreported). The court held that "[t]here is ample authority that a declaratory judgment action may be employed to challenge imposition of a tax. . . . Accordingly, Ammex may present its arguments in the state supreme court and seek a declaratory judgment from that court that application of these taxes to Ammex's export operations is unconstitutional."

The correctness of that holding was placed squarely before us by the Jurisdictional Statement that the appellants filed in this Court in the *Ammex* case. This Court's affirmance of the District Court's judgment is therefore a controlling precedent, unless and until re-examined by this Court. *Hicks* v. *Miranda,* 422 U. S. 332, 343–345. Since, however, it was a summary affirmance, it is not here "of the same precedential value as would be an opinion of this Court treating the question on the merits." *Edelman* v. *Jordan,* 415 U. S. 651, 671. But having now had

a full opportunity to consider the issue after briefing and argument, we adhere to our judgment in the *Ammex* case.

The District Court's ruling in that case was fully supported by New York decisional law. Despite the provisions of its taxing statutes that provide that judicial review of an administrative determination shall be a taxpayer's only remedy, the New York courts have consistently held that other procedures, including an action for a declaratory judgment, may be used when the claim is that the tax is unconstitutional. *Slater* v. *Gallman*, 38 N. Y. 2d 1, 4, 339 N. E. 2d 863, 864 (1975); *In re First Nat. City Bank* v. *City of New York Finance Admin.*, 36 N. Y. 2d 87, 92–93, 324 N. E. 2d 861, 864 (1975); *Richfield Oil Corp.* v. *City of Syracuse*, 287 N. Y. 234, 239, 39 N. E. 2d 219, 221 (1942); *Dun & Bradstreet, Inc.* v. *City of New York*, 276 N. Y. 198, 206, 11 N. E. 2d 728, 731–732 (1937); *Hospital TV Sys., Inc.* v. *State Tax Comm'n*, 41 App. Div. 2d 576, 339 N. Y. S. 2d 603 (1973). Thus, we remain fully persuaded that the District Court's holding in *Ammex* was correct, announced as it was by three New York federal judges "who are familiar with the intricacies and trends of local law and practice," *Bishop* v. *Wood*, 426 U. S. 341, 346 n. 10, quoting *Hillsborough* v. *Cromwell, supra,* at 630, quoting *Huddleston* v. *Dwyer*, 322 U. S. 232, 237.

It also seems clear that under New York law Griffin can fully preserve its right to challenge the amount of tax due while litigating its constitutional claim that no tax at all can validly be assessed against it. Griffin, in other words, need not accept as binding the Tax Commission's rough estimate of its sales tax liability as a price of challenging the constitutionality of the tax.

The New York Attorney General in his brief and in oral argument has represented to this Court that Griffin can obtain a preliminary injunction in state court that will toll the running of the 90-day period within which Griffin may challenge the amount of the assessment at an administra-

tive hearing.[7] Moreover, we have no reason to believe that a New York court, acting *sua sponte,* would question its ability to award preliminary relief in a proper case.

The District Court cited no New York authority for its "reservations" on this score, and we have found none. To the contrary, a New York statute speaks of the availability of a preliminary injunction "in any action" where certain conditions are met. N. Y. Civ. Prac. § 6301 (McKinney 1963). There are New York cases suggesting that courts may award preliminary relief in declaratory judgment actions in general, see, *e. g., In re Public Serv. Comm'n* v. *Norton,* 304 N. Y. 522, 529, 109 N. E. 2d 705, 708 (1952); *Opoliner* v. *Joint Queensview Housing Enterp., Inc.,* 11 App. Div. 2d 1076, 206 N. Y. S. 2d 681 (1960), and several New York courts have done so in cases involving the collection of taxes. See, *e. g., Stacy* v. *State,* 82 Misc. 2d 181, 368 N. Y. S. 2d 448 (Sup. Ct. 1975) (sales tax); *Glen Cove Theatres, Inc.* v. *City of Glen Cove,* 231 N. Y. S. 2d 747 (Sup. Ct. 1962). See also *Dun & Bradstreet, Inc.* v. *City of New York, supra,* at 206, 11 N. E. 2d, at 731–732 (permanent injunction approved in declaratory judgment action challenging imposition of sales tax). Although we have held that uncertainty concerning a State's remedy may make it less than "plain" under 28 U. S. C. § 1341, see *Hillsborough* v. *Cromwell,* 326 U. S., at 625, these New York precedents convincingly demonstrate that Griffin's fears about the availability of such preliminary relief are unfounded.[8]

Since New York provides a "plain, speedy and efficient" means for the redress of Griffin's constitutional claims, the

---

[7] Although acknowledging a New York court's *power* to issue a preliminary injunction in these circumstances, the Attorney General remains free, of course, to oppose the granting of such relief in any particular case.

[8] As we conclude that Griffin has an adequate remedy in a suit for a declaratory judgment, we need not decide whether judicial review under N. Y. Civ. Prac. Art. 78 would also be "plain, speedy and efficient."

District Court should not have granted injunctive relief. Its judgment granting Griffin's motion for a preliminary injunction is vacated, and the case is remanded to that court with instructions to dismiss the complaint.

*It is so ordered.*