**William R. GROFF,**

v.

**STATE OF MARYLAND Comptroller of the Treasury.**

**Civ. No. K–84–3613.**

United States District Court,
D. Maryland.

July 2, 1986.

William R. Groff, pro se.

Stephen H. Sachs, Atty. Gen. and John K. Barry and Gerald Langbaum, Asst. Attys. Gen., Annapolis, Md., for defendant.

FRANK A. KAUFMAN, Senior District Judge.

This case involves a dispute between a taxpayer [1] and the Income Tax Division of the Comptroller of the Treasury of the State of Maryland in connection with a Maryland income tax assessment for the year 1981. The underlying dispute involved is whether or not plaintiff was domiciled in the State of Maryland in 1981 and thus liable for Maryland state income tax as a "resident." *See* Md.Ann.Code art. 81, §§ 279(i) and 288(a) (1980). Plaintiff contests the assessment itself and complains of various due process violations arising out of the assessment, specifically claiming that he has not been afforded a prompt hearing in the Maryland courts and that he has been unconstitutionally charged with penalties and interest. The complaint seeks substantive relief protecting plaintiff against any assessment based on domicile and declaratory and/or injunctive relief staying collection of the assessment. *See* Complaint at 2.

Defendant seeks dismissal [2] of plaintiff's complaint pursuant to Federal Civil Rule

---

1. Plaintiff, William R. Groff, has appeared *pro se* throughout this litigation.

2. While defendant's supplemental motion to dismiss is accompanied by affidavits and exhibits, and other materials outside of the pleadings have been submitted at this Court's request, the said motion is nevertheless appropriately treated as a motion to dismiss under Federal Civil Rule 12(b)(1) for lack of subject matter jurisdiction and not as a summary judgment motion under Federal Civil Rule 56, as would be the case if the motion to dismiss were stated, for failure to state a claim upon which relief can be granted, pursuant to Federal Civil Rule 12(b)(6). *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982); *Mims v. Kemp,* 516 F.2d 21, 23 (4th Cir.1975) (per curiam); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1350, at 549–50 & n. 77 (1969). *See also* Judge Friendly's analysis in *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976).

12(b)(1), contending that this federal district court lacks subject matter jurisdiction because of the provisions of the Tax Injunction Act of 1937 28 U.S.C. § 1341 (1982). That Act provides: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." For the reasons stated in the within opinion, this Court concludes that plaintiff has been afforded a "plain, speedy and efficient remedy" in the Maryland state courts and that, accordingly, this Court does not have subject matter jurisdiction.

Plaintiff asserts that during 1981 he was a resident of the State of Illinois, that he earned his entire 1981 income in Illinois, and that he paid taxes in that State on his earnings.[3] Plaintiff claims that he owes no Maryland income tax for 1981. In previous and subsequent years plaintiff lived and worked in Maryland and has included his earnings as taxable income. There are no disputes concerning years other than 1981.

Plaintiff claims that (1) he was not a resident of Maryland in 1981 and therefore owes no state tax for that year; (2) provisions of the Maryland Code dealing with domicile, residency, and interest and penalties are unconstitutional, see Md.Ann. Code art. 81, §§ 279(i) and 288(a) (1980); art. 19 § 19 (1981);[4] (3) refunds otherwise due for subsequent tax years have been delayed pending resolution of this case in violation of plaintiff's right not to be deprived of property without due process of law; (4) penalties and interest have been assessed against plaintiff, also in violation of plaintiff's due process rights; and (5) plaintiff has been denied opportunities to be heard in the Maryland state courts.[5] Plaintiff also challenges the constitutionality of the Maryland income tax system on the ground that his 1981 Maryland tax assessment was 2.44 times higher than his Illinois state income tax for that same year. Plaintiff appears to be requesting that this Court enjoin further collection in connection with the 1981 assessment; order the payment to him of refunds to which he is entitled; and declare certain provisions of the Maryland Tax Code unconstitutional on their face and as applied to plaintiff herein.

The following chronology provides a brief history of the events leading up to and postdating the institution of the within suit. On or about April 13, 1982, plaintiff and his wife filed a combined separate return in Maryland for the 1981 tax year.[6] That return listed income for plaintiff totalling $37,005, but computed the tax owed as zero. Plaintiff's wife, having lived and worked in Maryland during 1981, included all of her income as taxable income on their tax return. The return did not claim nonresident status or note a change in domicile, nor did it seek credit for taxes paid to the State of Illinois. See Affidavit of Owen J. Silk ¶ 3(a) (hereafter "Silk Aff."). Thereafter, on May 25, 1982, the Maryland

---

3. Plaintiff allegedly lived and worked in Illinois from on or about October 1, 1980 until November 15, 1981. See Transcript of May 23, 1985 Maryland Tax Court proceeding at 8–9 (hereafter "Tax Ct. Tr.").

4. Md.Ann. Code art. 19, § 19 (1981), which was repealed as of October 1, 1985, deals with the Comptroller's power to issue a warrant to claimants against the State. The provision of the present Code that authorizes the collection of penalties and interest from a taxpayer is Md. Ann. Code art. 81, § 318 (1980 and Supp.1985). It would appear that plaintiff actually intended to challenge the latter provision.

5. Plaintiff seemingly asserts both procedural and substantive due process violations—procedural in terms of the alleged lack of an opportunity to be heard by state courts, and substantive in terms of the alleged deprivations of property and the underlying question of whether any Maryland state income tax can be assessed against him for the tax year in question.

6. Plaintiff claims, and the box checked on plaintiff's 1981 Maryland tax return indicates, that he and his wife filed a combined separate return for the 1981 tax year. See Tax Ct. Tr. at 17 and Petitioner's Exh. 3 thereto. Defendant has apparently stated that plaintiff's 1981 tax return was filed as a *joint* return. See Tax Ct. Tr. at 19. The consequences of that alleged discrepancy are not relevant and material; therefore, this Court does not reach any questions arising therefrom but simply notes the existence of the discrepancy as part of the record in this case.

Income Tax Division sent a Notice of Revised Income Tax Computation to Mr. and Mrs. Groff calculating a tax amount due from the figures shown on the Groffs' return. *See* Silk Aff. ¶ 3(b) and Silk Exh. B. The notice assessed against plaintiff unpaid Maryland income tax in the amount of $2,119.47, including penalties and interest. *See* Silk Aff. ¶ 3(b) and Silk Exh. B. The assessment was based on the Income Tax Division's conclusion that plaintiff was still *domiciled* in Maryland during 1981 despite his Illinois residence. Plaintiff responded to that notice with a letter dated June 21, 1982, claiming that he did not owe any Maryland tax for 1981 because he had paid Illinois tax that year and had not worked in Maryland in 1981. *See* Silk Aff. ¶ 3(c) and Silk Exh. C.

On or about July 8, 1982, another Notice of Income Tax Assessment was sent to the Groffs, adding additional penalties and interest to the amount of the unpaid assessment.[7] *See* Silk Exh. F. Defendant states that its computers are programmed automatically to send such notices approximately 45 days after the Notice of Revised Income Tax Computation is sent, unless specifically halted by taxpayer inquiry or protest. The notice stated that to contest the assessment, a taxpayer may file an appeal to the Maryland Tax Court within 30 days. *See* Silk Aff. ¶ 3(e). In addition to the computerized notice, on July 13, 1982, an employee of the Income Tax Division wrote to the Groffs, presumably responding to plaintiff's letter of June 21, 1982, requesting their 1981 Illinois tax return, *see* Silk Aff. ¶ 3(d) and Silk Exh. D, which plaintiff subsequently furnished. *See* Silk Aff. ¶ 3(d) and Silk Exh. E. Plaintiff re-

turned the July 8, 1982 notice to the Income Tax Division on or about July 14, 1982, noting on the reverse side thereof that he believed that he owed no Maryland tax for 1981 because he lived and worked in Illinois during that year. While no formal appeal was filed by plaintiff at that time, *see* Silk Aff. ¶ 3(f), plaintiff claims herein that defendant's failure to respond to his July 14, 1982 comments "allowed the 30 day period during which taxpayers ... must respond, to expire." Complaint at 4.

Thereafter, on September 1, 1982, a collection notice was sent to plaintiff. *See* Silk Exh. G. On September 9, 1982, plaintiff responded, apparently pursuant to a telephone conversation, by enclosing a copy of his 1981 Illinois state tax return. *See* Silk Aff. ¶ 3(g) and Silk Exh. H. On or about September 22, 1982, an employee of the Income Tax Division wrote to the Groffs, enclosing a recalculation of the tax due, giving credit for Illinois taxes paid, and noting that it was "the belief of the Division that based upon facts known Mr. Groff was domiciled in the State of Maryland for the year 1981."[8] A domicile questionnaire was also enclosed. *See* Silk Aff. ¶ 3(h) and Silk Exh. I. These audit changes produced a new right to appeal. On October 1, 1982, plaintiff returned the September 22, 1982 letter, and a completed domicile questionnaire, noting on the letter: "The enclosed form should initiate my appeal." *See* Silk Aff. ¶ 3(i) and Silk Exh. I.

Defendant proffers that the Income Tax Division file reflects no further action by either party until January 10, 1984, *see* Silk Aff. ¶ 3(j), at which time plaintiff wrote to the Division expressing concern that he

---

7. Plaintiff, at ¶ 1 of his Complaint, claims that the July 8, 1982 Notice of Income Tax Assessment was the first and only notice he received of the assessment and that he had not been accorded prior notice of the delinquent or additional tax due. However, his June 21, 1982 letter which appears to be a response to the May 25, 1982 Notice of Revised Income Tax Computation, is not consistent with that claim. In any event, that dispute is of little relevancy or materiality herein.

8. That conclusion would appear to be based upon Md.Ann. Code art. 81, § 288(a) which provides that "resident individual[s]" of Maryland may be taxed. A resident is defined in section 279(i) as "an individual domiciled in this State on the last day of the taxable year, and every other individual who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not."

might have lost his appeal rights [9] and requesting a new assessment so that he could then pursue an appeal to the Maryland Tax Court. *See* Silk Aff. ¶ 3(k) and Silk Exh. I. Seven months later, on August 17, 1984, the Income Tax Division recalculated the tax due, disallowing other unrelated deductions taken by the Groffs, and crediting the Groffs for refunds held as an offset for the 1981 unpaid taxes. *See* Silk Aff. ¶ 3(*l*) and Silk Exh. K. It is not clear from the record in this case whether plaintiff received notification of the recalculation at the time it was prepared.

On September 26, 1984, plaintiff filed the within lawsuit in this federal district court, claiming, *inter alia,* that he had been denied access to the Maryland Tax Court since August 7, 1982, when the 30–day appeal period on the July 8, 1982 Notice of Income Tax Assessment allegedly expired. *See* Motion by Plaintiff and Memorandum in Support of Denial of Motion to Dismiss, filed January 22, 1984, at p. 1 of Attachment A. Thereafter, on or about October 3, 1984, plaintiff was sent a Notice of Income Tax Assessment based on the August 17, 1984 recalculation. The notice, as did the previous notice, advised plaintiff that the assessment could be contested by filing an appeal to the Maryland Tax Court within 30 days of the date of the notice. *See* Silk Aff. ¶ 3(m) and Silk Exh. L. In response to a letter apparently sent by plaintiff to the Maryland Tax Court, which was received on October 10, 1984, plaintiff was advised that to perfect a timely appeal he should file the Petition forms given to him by November 9, 1984. *See* October 10, 1984 letter from Robert L. Zouck to plaintiff and October 10, 1984 Order of the Maryland Tax Court. On October 24, 1984, plaintiff filed a Petition of Appeal. Receipt thereof was acknowledged by letter dated October 24, 1984. On January 16, 1985, a hearing date was set before the Maryland Tax Court for May 23, 1985. By Order dated May 31, 1985, the Maryland Tax Court affirmed the assessment. The record in the within case gives no indication that plaintiff has sought review of that decision in the courts of Maryland. *See* October 7, 1985 letter from Assistant Attorney General John K. Barry to this Court, ¶ 2.

## SUBJECT MATTER JURISDICTION

■ The Tax Injunction Act of 1937, 28 U.S.C. § 1341, precludes a federal district court from enjoining, suspending or in any way restraining the assessment, levy or collection of state taxes where state law provides "a plain, speedy and efficient remedy" in the courts of such state. *See Strescon Industries, Inc. v. Cohen,* 664 F.2d 929, 931 (4th Cir.1981). *See generally* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4237 (1978) (hereafter "Wright, Miller & Cooper"). The Act "has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a state to administer its own fiscal operations." *Tully v. Griffin, Inc.,* 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). It operates as a " 'broad jurisdictional barrier,' [and] bars even claims that the state tax is illegal or unconstitutional." *Kistner v. Milliken,* 432 F.Supp. 1001, 1004 (E.D.Mich.1977) (citations and footnotes omitted). Thus, as a general rule, federal courts may not interfere with the states' mechanisms for resolving tax controversies except when state remedies are not plain, speedy and efficient. *Strescon,* 664 F.2d at 931.

■ The Tax Injunction Act applies to declaratory and injunctive relief, *California v. Grace Brethren Church,* 457 U.S. 393, 408–11, 102 S.Ct. 2498, 2507–09, 73 L.Ed.2d 93 (1982); *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 299, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943), as well as to damage actions arising from assessments. *See Fair Assessment in Real Estate Association, Inc. v. McNary,*

---

**9.** Plaintiff's January 10, 1984 letter states, in part, that plaintiff was unaware of the 30–day appeal period until December 1983. The July 1982 and September 1982 Notices of Income Tax Assessment which were sent to plaintiff state explicitly, however, that "an appeal may be taken to the Maryland Tax Court within thirty days from the date of this notice."

454 U.S. 100, 115–16, 102 S.Ct. 177, 185–86, 70 L.Ed.2d 271 (1981). Nor can the bar of the Act be avoided simply because a plaintiff claims a civil rights violation. *See Moss v. Georgia,* 655 F.2d 668, 669 (5th Cir.1981) (per curiam) (citations omitted); 17 Wright, Miller & Cooper, *supra,* § 4237, at 427 & n. 40. In addition, because the Act limits subject matter jurisdiction, it cannot be waived. *See Kimmey v. Berkheimer, Inc.,* 376 F.Supp. 49, 53 (E.D.Pa. 1974), *aff'd without opinion,* 511 F.2d 1394 (3d Cir.1975).

In the within suit, plaintiff seemingly seeks both declaratory and injunctive relief in connection with the assessment for 1981 unpaid taxes. Thus, because the relief requested falls within the proscriptions of the Act, it is necessary to analyze what constitutes "a plain, speedy and efficient" state remedy and to determine whether the State of Maryland provides such a remedy and has made such remedy available to plaintiff herein. The burden as to those issues rests with plaintiff. "[T]o establish subject matter jurisdiction[ ] in the instant case, Plaintiff[ ] must show by a preponderance of the evidence that [he] fall[s] within the purview of this statutory exception." *Adams v. Board of Supervisors,* 569 F.Supp. 20, 22 (W.D.Va.1983) (citations omitted).

■ Justice Brennan, in his recent opinion for the Supreme Court in *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), construed the meaning of the "plain, speedy and efficient" exception to the Tax Injunction Act. After reviewing previous decisions and the legislative history of the Act, Justice Brennan concluded that the exception, "[o]n its face, ... appears to require a state-court remedy that meets certain minimal *procedural* criteria." *Id.* at 512, 101 S.Ct. at 1228 (emphasis in original). Specifically, a state court remedy satisfies this basic inquiry if it "provides the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Id.* at 514, 101 S.Ct. at 1229 (citation omitted). *See also Hutcherson v. Board of Supervisors,*

742 F.2d 142, 145 (4th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1358, 84 L.Ed.2d 380 (1985); *Strescon Industries, Inc. v. Cohen,* 664 F.2d 929, 931–32 (4th Cir.1981). Thus, an asserted substantive defect in the state remedy does not remove the bar to federal jurisdiction where otherwise adequate procedures exist. *Strescon,* 664 F.2d at 931.

The state remedy provided to Plaintiffs need not be the best remedy available or even equal to or better than the remedy which might be available in federal court. . . . "A state remedy either in law or equity will, if otherwise adequate, suffice to defeat jurisdiction." . . . This remedy may be found both in state statutory law and decisional authority. . . .

*Adams v. Board of Supervisors,* 569 F.Supp. 20, 31 (W.D.Va.1983) (*citing* 17 Wright, Miller & Cooper, *supra,* § 4237, at 420–21 & n. 21; other citations omitted).

In *Rosewell* Justice Brennan considered an Illinois case in which two years had elapsed before plaintiffs could obtain a refund, 450 U.S. at 505, 101 S.Ct. at 1225, and in which the taxpayer claimed due process and equal protection violations because she had been taxed in excess of the amount allegedly due. *Id.* at 510, 101 S.Ct. at 1227. After a detailed analysis of delay and docket congestion in federal, state and Illinois cases, *id.* at 518–21 and nn. 23–25, 101 S.Ct. at 1231–33 and nn. 23–25, Justice Brennan concluded that a two-year delay did not "fall[ ] outside the boundary of a 'speedy' remedy." *Id.* at 521, 101 S.Ct. at 1233. The Court also found that the Illinois procedure which required the taxpayer to first pay an allegedly unconstitutional tax and then seek a refund through state administrative and judicial procedures was sufficiently "plain" in that the state "court will hear and decide any federal claim." *Id.* at 517, 101 S.Ct. at 1231; *see also id.* at 514, 101 S.Ct. at 1229.

■ In reaching the above conclusion, Justice Brennan analyzed the meaning of the statutory exception in detail. He explained that a procedurally "plain" remedy has been found not to exist where there is

uncertainty surrounding the state remedy. *Id.* at 517, 101 S.Ct. at 1231. For example, in *Hillsborough v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1945), Justice Douglas concluded that federal jurisdiction would lie where a state court remedy was so uncertain "as to make it speculative ... whether the State affords full protection to the federal rights." *Id.* at 625, 66 S.Ct. at 449. It is to be noted that in *Hillsborough*, in addition to the existence of questions including the specific proceedings at issue, the state board of tax appeals had no right to pass on constitutional questions, further review was by certiorari, and such further review was purely discretionary. *Id.* at 625–26, 66 S.Ct. at 449. *See also Garrett v. Bamford*, 538 F.2d 63, 67–70, *cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), *later appeal*, 582 F.2d 810 (3d Cir.1978), in which plaintiffs were found not to have an adequate remedy in state equity courts since availability of a Pennsylvania equity forum to review constitutional claims was uncertain. In sum, a remedy is "plain" if it is not speculative as to whether the remedy provides a full hearing and judicial determination in connection with which the taxpayer may raise any and all constitutional objections to that tax.

■ A remedy is "efficient" if it meets minimum procedural requirements. *See Rosewell*, 450 U.S. at 517, 101 S.Ct. at 1231. Seemingly, that element has been interpreted to mean that a taxpayer should not have to bring "multiple suits involving identical issues against the same defendant." *Garrett v. Bamford*, 538 F.2d at 71. *See also Rosewell*, 450 U.S. at 517, 101 S.Ct. at 1231 (*citing Georgia Railroad & Banking Co. v. Redwine*, 342 U.S. 299, 303, 72 S.Ct. 321, 323, 96 L.Ed. 335 (1952) (federal jurisdiction held present because state remedy would have required filing of over 300 separate claims in 14 different counties to pursue the sole federal claim)). Similarly, federal court jurisdiction has been exercised when the state remedy would allow a challenge against only one of many taxing authorities. *Rosewell*, 450 U.S. at 517–18, 101 S.Ct. at 1231. However, "a State's remedy does not become 'inefficient,' mere-

ly because a taxpayer must travel across a state line in order to resist or challenge the taxes sought to be imposed." *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976). Simply stated, an efficient remedy is one which "imposes no unusual hardship on [a taxpayer] requiring ineffectual activity or an unnecessary expenditure of time or energy." *Rosewell*, 450 U.S. at 518, 101 S.Ct. at 1231 (footnote omitted).

In *Rosewell* Justice Brennan, noting that "[t]his Court has never expressly discussed the meaning of the word 'speedy,'" stated that "[s]peedy" is a "relative concept, and we must assess the ... delay against the usual time for similar litigation." *Id.* at 518, 101 S.Ct. at 1231. In concluding that the two-year delay did not warrant the exercise of federal jurisdiction under the circumstances of *Rosewell*, Justice Brennan commented in general about docket congestion and delay in federal and state courts. *See id.* at 518–20 and nn. 23–25, 101 S.Ct. at 1231–32 and nn. 23–25. Specifically, he noted that it was not unusual for a case to take one and one half to two years from filing to disposition. *See id.* In addition, Justice Brennan noted that "[p]art of the problem of delay inheres in the very nature of state tax administration." *Id.* at 520 n. 26, 101 S.Ct. at 1232 n. 26. Finally, "[n]owhere in the Tax Injunction Act did Congress suggest that the remedy must be the speediest." *Id.* at 520, 101 S.Ct. at 1232 (footnote omitted).

■ Maryland law provides both administrative and judicial remedies through which a taxpayer may contest an assessment. Pursuant to section 351(a), a taxpayer can request that an assessment be revised by the Comptroller of the Treasury. Such a request must be made which 30 days of the date on which the Comptroller mails a notice of the assessment to the taxpayer's last known address. Md.Ann. Code art. 81, § 351(a)(1) (1980). An application for a refund must also be made within the same 30-day period, provided the assessment is first paid by the taxpay-

er. § 351(a)(2). Within 30 days of the mailing of the Comptroller's notice of his action upon the request for revision or refund the taxpayer may request a formal hearing before the Comptroller. § 351(a)(4). Section 352 provides for an appeal of a final determination of the Comptroller to the Maryland Tax Court to be filed within 30 days from the date of mailing of the relevant notice. In addition, a taxpayer may appeal an assessment directly to the Maryland Tax Court within 30 days from the date of the notice. § 309(d) (Supp.1985).

The Maryland Tax Court is considered an administrative agency and performs quasi-judicial functions. Md.Ann. Code art. 81, § 224 (Supp.1985). *See White v. Prince George's County,* 282 Md. 641, 658, 387 A.2d 260 (1978); *Allnut v. Comptroller,* 61 Md.App. 517, 521–22, 487 A.2d 670, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). "Proceedings before the Court shall be de novo and shall be conducted in a manner similar to proceedings in courts of equity in this State." § 229(c). Any party may appeal the Tax Court decision to the Circuit Court for a county. § 229(*l*) (Supp.1985); *see Comptroller v. Haskin,* 298 Md. 681, 689, 472 A.2d 70 (1984); *Allnut v. Comptroller,* 61 Md.App. 517, 522, 487 A.2d 670, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). Intermediate appellate review may be had in the Court of Special Appeals provided an appeal is taken within 30 days of the final judgment of the lower court. § 229(p) (Supp.1985). Thereafter, certiorari jurisdiction rests in the Court of Appeals. *See* Md.Cts. & Jud.Proc. Code Ann. § 12–201 (1984). If a federal constitutional claim is involved, an appeal may ultimately be taken to the United States Supreme Court pursuant to 28 U.S.C. § 1257(2).

In accordance with its quasi-judicial powers, the Maryland Tax Court has full decision making power over matters of fact. A circuit court shall affirm an order of the Tax Court "if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." Md.Ann. Code art. 81, § 229(*o*) (Supp.1985). *See Comptroller v. Haskin,*

298 Md. 681, 689–90, 472 A.2d 70 (1985). *See also* § 229(g) which permits the Tax Court to "submit to a court of law, in the jurisdiction where the taxpayer resides or carries on business, issues of fact for trial before a jury." However, when the Tax Court decides issues of fact, as it usually does, then, despite the fact that the Circuit Courts are considered courts of original rather than appellate jurisdiction in the context of reviewing Tax Court decisions, *see Shell Oil Co. v. Supervisor of Assessments,* 276 Md. 36, 47–50, 343 A.2d 521 (1975), such review is limited in scope with respect to factual matters. *See Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 831, 834, 490 A.2d 1296 (1985). It is to be noted, however, that "[u]nder this standard, a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law." *Id.* at 834, 490 A.2d 1296 (citations omitted). Accordingly, since Maryland's courts are empowered to hear and decide federal constitutional questions, *see generally Maryland Commission for Fair Representation v. Tawes,* 228 Md. 412, 426, 180 A.2d 656 (1962), it would appear that a taxpayer is afforded a full and fair opportunity to raise in the Maryland courts federal constitutional challenges with respect to an assessment. *See also Xerox Corporation v. Comptroller,* 290 Md. 126, 428 A.2d 1208 (1981); *Allnut v. Comptroller,* 61 Md.App. 517, 527, 487 A.2d 670, *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985). This is true despite the fact that the Maryland Tax Court seemingly cannot itself entertain such federal constitutional challenges. *See Armco, Inc. v. Comptroller,* No. 1808 (Md. Tax Ct. Oct. 21, 1985), a copy of which has been placed in the court file in this case, in which, in assessing the proper tax treatment of dividends received from a domestic international sales corporation the Maryland Tax Court wrote:

> Despite its name, the Maryland Tax Court is not a judicial body but a statewide administrative agency. *Shipp v. Bevard,* 291 Md. 590 [435 A.2d 1114]

(1981). Accordingly, we find ourselves without jurisdiction to entertain Petitioner's appeal to the extent that it requests us to declare part of a statute constitutionally invalid.

Slip op. at 1.

Equitable relief in the form of a declaratory judgment is not, however, necessarily available to a taxpayer who has not exhausted administrative remedies. On the one hand, "[i]t is well settled that for purposes of § 1341 the availability of state declaratory judgment relief also serves as a sufficient remedy to preclude federal jurisdiction." *Blaske v. Bowen*, 437 F.Supp. 1056, 1059 (S.D.Ind.1976) (citations omitted), *aff'd without opinion*, 559 F.2d 1224 (7th Cir.1977). *See, e.g., Tully v. Griffin, Inc.*, 429 U.S. 68, 74–76, 97 S.Ct. 219, 223–24, 50 L.Ed.2d 227 (1976) (plaintiff found to have adequate remedy under New York law in a state suit seeking a declaratory judgment). In Maryland, however, a taxpayer must first pursue statutory remedies in the Maryland Tax Court before a declaratory judgment action in a Circuit Court will lie. *See Reiling v. Comptroller*, 201 Md. 384, 388, 94 A.2d 261 (1952); *Baltimore County v. Maryland Department of Assessments and Taxation*, 47 Md.App. 88, 90–91, 94–95, 421 A.2d 993 (1980) (*citing Maryland-National Capital Park and Planning Commission v. Washington National Arena*, 282 Md. 588, 386 A.2d 1216 (1978)). Nevertheless, Maryland does recognize two exceptions to the rule requiring exhaustion of administrative remedies.

> The first exception permits an aggrieved party to seek judicial relief prior to the exhaustion of his administrative remedies where the constitutionality of the statute under which the administrative agency is acting is challenged.... As the Court made clear in *Clark*, this exception is applicable only where the constitutionality of the statute as a whole, as opposed to the constitutionality of the statute as applied to a particular situation, is challenged. The second exception permits a party to eschew administrative

resolution of a dispute where there exists no administrative remedy or where the administrative remedy provided is inadequate.

47 Md.App. at 91–92, 421 A.2d 993 (citations omitted). *See also Shipp v. Bevard*, 291 Md. 590, 603, 435 A.2d 1114 (1981) ("when a constitutional issue goes to the application of a statute, rather than the statute on its face, resort must be had to the statutory, administrative and judicial review remedies").

In the within case plaintiff has challenged the constitutionality of Md.Ann. Code art. 81, §§ 279(i) and 288(a), dealing with taxation on "residents," and art. 19, § 19,[10] dealing with interest and penalties. In addition, plaintiff has alleged that the entire Maryland income tax system is unconstitutional because his Maryland tax for the 1981 tax year was 2.44 times higher than his Illinois state tax for that same year. While plaintiff does not state explicitly whether such challenges are to the statute as a whole, or as applied in this case, an argument can be made that these are facial challenges and that the exceptions to the exhaustion requirement would apply, thus barring federal subject matter jurisdiction herein since Maryland judicial forums are available to entertain such attacks. It is of course also to be noted that if the constitutional challenge herein of plaintiff is on an "as applied" basis, the availability of the Maryland Tax Court administrative forum and of the reviewing Maryland judicial forums would call for that same conclusion.

In addition to state declaratory relief, plaintiff has available to him other adequate state remedies. Despite the apparent inability of the Maryland Tax Court to decide constitutional claims, a plenary remedy in the Circuit Courts and Maryland's Appellate Courts exists. *See* discussion *supra* p. 575. In *Strescon Industries, Inc. v. Cohen*, 664 F.2d 929 (4th Cir.1981), a suit involving a commerce clause challenge to Maryland and Pennsylvania tax assess-

---

**10.** *See* note 5 *supra*.

ments, Judge Bryan held that Maryland's procedures were not inadequate, *id.* at 932, commenting in particular on the fact that in addition to an administrative mechanism for review of refunds and assessments, Maryland "guarantees its taxpayers the right to appeal adverse administrative determinations to a court of record. These courts, of course, are authorized to hear and resolve constitutional claims." *Id. See also Federally Documented Vessel Owners, Inc. v. Comptroller,* No. HM 82–3033, slip op. at 5–6 (D.Md. Apr. 11, 1983), a copy of which has been placed in the court file in this case.

The above cases and statutes demonstrate that Maryland's procedures provide the taxpayer with the opportunity for a " 'full hearing and judicial determination' at which [he] may raise any and all constitutional objections to the tax." *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 514, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981). The fact that plaintiff herein has not taken an appeal to the Circuit Court from the May 31, 1985 Tax Court Order is not determinative. *See* 17 Wright, Miller & Cooper, *supra,* § 4237, at 422 and n. 24. All that is required is that the state court remedy meet "certain minimal *procedural* criteria." 450 U.S. at 512, 101 S.Ct. at 1228 (emphasis in original). Moreover, plaintiff appears to have raised his constitutional claims before the Maryland Tax Court during the May 23, 1986 hearing, and the Tax Court apparently in fact considered those claims. *See* Tax Ct. Tr. at 5, 40–41. While plaintiff's constitutional claims were not explored by the Maryland Tax Court in great detail, and there are several references in the record to the effect that procedural matters were deemed not "germane," Tax Ct. Tr. at 37–39, the Maryland Tax Court did ultimately conclude that the Income Tax Division had the authority to withhold subsequent returns in payment of the 1981 assessment. Tax Ct. Tr. at 55.[11]

Plaintiff is also asserting herein that he has been denied a speedy remedy.[12] Plaintiff concedes that the seven and a half months that elapsed between October 3, 1984 and May 23, 1985 is "plain, speedy and efficient." *See* Motion by Plaintiff, Memorandum in Support of Denial of Motion to Dismiss, filed May 22, 1985, at 11. Plaintiff argues, however, that the two and a half year period between August 7, 1982, the date upon which his 30–day appeal period in connection with the July 8, 1982 assessment notice allegedly expired, and October 3, 1984, when plaintiff received a new assessment notice and a corresponding right to appeal was not "speedy."

The only true period of inactivity in the within case is the period from October 1982 until January 10, 1984, when plaintiff wrote to the Income Tax Division expressing concern over the loss of his appeal rights. In view of the fact that plaintiff did not initiate a formal appeal with regard to either the July or September 1982 assessments, the Tax Division seemingly cannot be expected to shoulder all of the blame for any such delay. Prior to October 1982, plaintiff and defendant exchanged correspondence in connection with the assessment. Subsequent to January 10, 1984 plaintiff was sent an additional Notice of Income Tax Assessment and appealed therefrom. While approximately ten months passed before plaintiff received that additional notice, plaintiff's tax was recalculated in August 1984. Overall, the period of time does not constitute, in this Court's view, any unreasonable delay. *See* discussion *supra* p. 574. In sum, while it

11. Plaintiff also challenges the fact that the burden of proof rests with the taxpayer challenging the assessment and that he did not receive proper notice of available remedies. *See* Supplemental Motion by Plaintiff, filed June 18, 1985, at 1–3. This Court believes that plaintiff received adequate notice of his rights, *see* note 9 *supra.* With respect to the burden of proof, *see Adams v. Board of Supervisors,* 569 F.Supp. 20, 22 (W.D.Va.1983), cited *supra* p. 573.

12. With respect to efficiency, plaintiff does not appear to be claiming, nor does Maryland law suggest, that he would be required to file multiple or repetitive lawsuits on the same issue or that he has been put through unusual hardship or unnecessary expenditures of time or money as a result of state procedures. *See* discussion *supra* p. 574.

would appear that plaintiff may perhaps have been the victim of some bureaucratic and largely unexplained delays, plaintiff did not receive unfair treatment. Specifically, it is to be noted that in October 1984 plaintiff received, at his own request, an additional assessment, which enabled him to seek further review in the Maryland Tax Court on an admittedly prompt basis.

For the reasons stated in the within opinion and because of the strong policy against federal district courts' interference into a state's administration of its fiscal affairs, this Court concludes that Maryland's remedy for contesting income tax assessments is, in general and as applied to plaintiff, "plain, speedy and efficient." Accordingly, the Tax Injunction Act, 28 U.S.C. § 1341, operates as a jurisdictional bar to the within suit in this federal court, and requires that defendant's motion (and supplemental motion) to dismiss for lack of subject matter jurisdiction be granted. This Court is today entering an Order granting dismissal, without prejudice, of the within suit.