Wendy MOORE, James Best, Ellen Best, and Catherine Byrne, individually and on behalf of all others similarly situated, and Wellspring Zendo, Inc., Plaintiffs,

v.

James TRIPPE, Robert P. Buehler, Leonard J. Scofield, Nancy Jane Wooley, and Stephen F. Wund, individually and as members of the Town Board of the Town of Pound Ridge, James J. Sullivan, individually and as Town Attorney, Murray Crandell, Building Inspector, Sol Horne, Tax Assessor, and The Town of Pound Ridge, Defendants.

89 Civ. 5450 (GLG).

United States District Court, S.D. New York.

July 17, 1990.

McGovern, Connelly & Davidson, New Rochelle, N.Y. (Douglas R. Hoyt, Margaret M. Fitzpatrick, of counsel), for plaintiffs.

Bleakley Platt & Schmidt, White Plains, N.Y. (Michael J. Trainor, William P. Harrington, of counsel), for defendants.

## OPINION

GOETTEL, District Judge:

This action involves a vitriolic dispute between members of a religious community in the Town of Pound Ridge (the "Town"), which is located in Westchester County, New York, and the Town itself, including numerous Town officials. In a nutshell, plaintiffs, who are Zen Buddhists engaged in the practice of their religion at the Wellspring Zendo in the Town, complain that the Town and its officials have engaged in a derisive course of conduct in an effort to prevent them from freely practicing their religion.[1] Plaintiffs have commenced this action for compensatory and punitive damages, as well as for declaratory and injunctive relief.

## I. FACTS

In 1979, plaintiff Wellspring Zendo, Inc., a Connecticut corporation which is also qualified as a not-for-profit religious organization under New York law, acquired 19 acres of property in the Town, apparently for religious uses.[2] Sometime thereafter, a building permit was issued permitting the construction of a temple on the grounds and, following construction of a two-story edifice, on April 14, 1986 a certificate of occupancy was issued. Thereafter, the building and its surrounding grounds were used for religious services. According to plaintiffs, an integral part of their religion involves so-called "Work Practice," which includes care and maintenance of the temple and its grounds while silently meditating.

In August 1988, neighbors living adjacent to the plaintiffs, the Nitkins, who had

---

1. This court does not understand Zen Buddhism to be a religion in the traditional sense. Rather, it is "a Japanese school of Mahayana Buddhism that teaches self-discipline, deep meditation, and the attainment of enlightenment by direct intuitive insight into a self-validating transcendent truth beyond all intellectual conceptions and characteristically expresses its teachings in paradoxical and nonlogical forms." *Webster's Third New International Dictionary* 2657 (1971). However, defendants have not raised this issue and we will, for purposes of this Opinion, consider Zen Buddhism as a religion.

2. The individually named plaintiffs are officers of Wellspring Zendo, Inc. and are practicing Zen Buddhists.

owned their home since 1983, began complaining to Town officials about certain of plaintiffs' practices. Specifically, the Nitkins claimed that plaintiffs were engaged in significant landscaping on plaintiffs' property, including the elimination of numerous trees, the creation of berms, and blasting. Additionally, the Nitkins alleged that plaintiffs' practices, religious in nature though they may have been, began at 5:00 a.m. and included loud chanting and music. Thereafter, in January 1989, the Nitkins filed a second grievance with the Town which raised additional contentions. The Nitkins claimed that plaintiffs had staked their property boundaries with over two hundred "No Trespassing" signs, had continued to engage in significant earth movement using power equipment, and had secured their property with armed guards. Plaintiffs allege that their actions were legitimate means of practicing their religion and that placing the signs around the property was in response to the scurrilous epithets screamed at them by the Nitkins. The Nitkins then commenced an action against plaintiffs in the Supreme Court of the State of New York, County of Westchester, based on some of the foregoing events.[3]

Thereafter, plaintiffs claim, the Town initiated a course of conduct motivated by prejudice and it is these actions that give rise to the instant litigation. Specifically, plaintiffs claim that the Town began conducting repeated investigations of the activities on plaintiffs' property in an effort to interfere with their religious practices. On March 14, 1989, a Notice of Violation was issued to plaintiffs for a greenhouse located on their property that did not possess the requisite permits.[4] Moreover, on March 15, 1989, the Town Board passed a resolution to amend the Town Code, which ultimately became effective on April 14, 1989.[5] Plaintiffs suggest that this new measure was directed solely towards them. On June 13, 1989, following further inspections of plaintiffs' property, a second Notice of Violation was issued for three structures located on the property.[6] Plaintiffs contend that these structures, a duck pen, a pigeon coop, and a tool shed, had been on

**3.** The Nitkin litigation resulted in a partial jury verdict in favor of the Nitkins, but it was only an advisory finding with respect to damages. The Honorable Matthew F. Coppola then entered a Judgment of $45,000 for the Nitkins and also imposed certain restrictions on the practices of the plaintiffs herein. However, Justice Coppola did grant a utility easement to the plaintiffs. Both parties took appeals from this Judgment, but before the appeals were decided, the case was settled. We have not been informed of the terms of this April 30, 1990 agreement. We note Justice Coppola's findings only for the sake of completeness and are in no way expressing any inclination to rely on his determinations.

**4.** The greenhouse has since been removed by plaintiffs.

**5.** The new provision, ultimately enacted as section 113–21C of the Code of the Town of Pound Ridge (the "Code"), reads as follows:

[N]o use, construction, modification, addition or alteration of any building structure or premises, shall be undertaken by the property owner without the prior site plan approval of the Planning Board pursuant to Article VIII of this Chapter. Nor shall such property owner at any time undertake to remove, relocate, alter, or enlarge any existing stonewall, pond, wetland, natural soil grade or other existing topographical feature, including stands of trees or vegetation in excess of three (3) feet in height and within seventy-five feet of any property line without such prior site plan approval as is required hereunder.

This provision is specifically limited to non-residential properties, such as churches and schools, located in residential areas.

**6.** This Notice of Violation states that section 42–10 of the Code had been violated. This section states, in pertinent part, that it is:

unlawful to construct … a building or other structure … without filing an application in writing with the building inspector upon prescribed forms, together with adequate sets of plans and specifications for such proposed work … and obtaining a formal permit to proceed with the same.

A "structure" is defined by section 113–2B of the Code as "anything constructed or erected, the use of which requires location on the ground or attachment to something having location on the ground, including but not limited to signs, swimming pools and tennis courts." We note that while this second Notice of Violation claimed that section 42–10 was being violated, it further stated that to cure the defect, plaintiffs first had to acquire site plan approval under section 113–21C, *see supra* note 5, and that once such approval was obtained, plaintiffs could apply for a building permit pursuant to section 42–10.

the property, with the Town's knowledge and apparent acquiescence, since 1986. While plaintiffs removed the greenhouse from the property, they did not cure the alleged violations caused by the other three structures. The Town then filed a suit in the Supreme Court of the State of New York, County of Westchester, seeking enforcement of this second Notice of Violation.[7] The final factor about which plaintiffs complain is a June 2, 1989 tax assessment on their property by the Town's Tax Assessor. While Wellspring Zendo, Inc. had maintained a completely tax exempt status since 1979, this 1989 assessment concluded that $39,000 of the $450,000 property assessment was subject to taxation. Plaintiffs claim that the assessment, as well as a questionnaire they received in conjunction with the assessment, was merely another means of challenging the legitimacy of their religion and preventing the free exercise thereof. Plaintiffs have filed an action in the Supreme Court of the State of New York, County of Westchester, seeking a declaration that the tax assessment was unconstitutional.[8]

To summarize, presently arising out of this dispute are two actions in state court, one instituted by the plaintiffs regarding the tax assessment and one instituted by the Town to enforce the second Notice of Violation, as well as the instant action wherein plaintiffs allege that the amendment to the Code, the tax assessment, the issuance of the Notices of Violation, and other less specific discriminatory actions by the defendants have interfered with their religious practices and have violated their first and fourteenth amendment rights, as well as their rights under the Constitution of the State of New York. The violations of the United States Constitution, plaintiffs claim, also give rise to damage claims under 42 U.S.C. §§ 1983 and 1985 (1982).

Presently before us are two motions. First, plaintiffs have moved for class certification. In addition, defendants have moved to dismiss the action pursuant Federal Rule of Civil Procedure 12(b)(6).[9] They raise numerous grounds upon which they allege dismissal to be warranted. Initially, defendants claim that the five members of the Town Board, who were sued in both their individual and official capacities, are immune from suit for their adoption of the amendment to the Town Code under the absolute legislative immunity doctrine. Defendants further claim that defendant James J. Sullivan, the Town Attorney, who was also sued in both his individual and official capacities, as well as the members of the Town Board, are protected by absolute prosecutorial immunity for enforcing the Town's Code and issuing the Notices of Violation. Moreover, even if absolute immunity does not apply, defendants suggest that the individually named defendants are each entitled to qualified immunity. In addition, defendants claim that the amendment to the code violates neither plaintiffs' first amendment rights nor their fourteenth amendment due process rights.[10] Finally, defendants contend that the Tax Injunction Act, 28 U.S.C. § 1341 (1988), prevents us from hearing any claims on the tax assessment made on Wellspring Zendo, Inc. Alternatively, defendants suggest that if we do not dismiss the tax claim based on the Tax Injunction Act, we should abstain from hearing the claim based on *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96

---

**7.** This enforcement proceeding was instituted by the Town approximately one month after the instant action began and is presently pending.

**8.** This state court proceeding began approximately one month after the case at bar and remains pending as well.

**9.** Since both parties have presented affidavits and exhibits, this motion could possibly be treated as one for summary judgment. Fed.R. Civ.P. 12(b). As will be seen, however, we have not needed to rely on these materials and, therefore, can properly treat it as a motion to dis-

miss, governed by the standards established for such applications. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (dismissal mandated if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

**10.** While the Complaint also alleges that plaintiffs have been denied equal protection in contravention of the fourteenth amendment, defendants' motion does not address this claim.

S.Ct. 1236, 47 L.Ed.2d 483 (1976), and its progeny.[11] Once dismissal of these federal claims is granted, defendants claim, the pendent state claims must also be dismissed.

## II. DISCUSSION

We will initially address the arguments raised, and some that were not raised, on the dispositive motion and then proceed to the motion for class certification.

### A. *Motion to Dismiss*

#### 1. Amendment to Town Code

The Complaint alleges that the amendment to the Town Code is unconstitutional since it interferes with plaintiffs' religious practices and is not reasonably related to any lawful zoning laws. Moreover, plaintiffs claim that the amendment amounts to a deprivation of property without due process.[12] Plaintiffs seek damages for this claim, as well as injunctive and declaratory relief.

Defendants raise numerous defenses relating to this claim. First, they suggest that the individually named members of the Town Board are entitled to absolute legislative immunity on this count. Alternatively, defendants contend that these individually named defendants are entitled to qualified immunity. Finally, defendants argue that the code amendment itself violates neither the first nor the fourteenth amendments since it is necessary to achieve a compelling governmental interest, it does not single out any particular group, and it does not interfere with plaintiffs' property rights.

As a preliminary matter, we note that plaintiffs seek a declaration that the entire amended statute, which is comprised of two parts, is unconstitutional. The first portion of the statute states that a party must obtain site plan approval from the Town before erecting a structure or otherwise altering the premises. The second part of the amended statute deals with specific ac-

tivities that may also require site plan approval, such as alterations to soil, trees, or vegetation. In reviewing the Notices of Violation that were served on plaintiffs, we note a potential standing or ripeness problem with respect to plaintiffs' demands. One of the principal objections plaintiffs have to the amended statute is that the second part of the statute prevents plaintiffs from engaging in ordinary gardening or landscaping without obtaining approval, which plaintiffs claim is an unreasonable restriction of their property rights. However, neither of the Notices of Violation mentions this part of the statute as having been violated. The first Notice of Violation, we note, has been cured since the greenhouse has been removed. Moreover, the second Notice of Violation, which refers to the three structures located on plaintiffs' property, charges plaintiffs with violating section 42–10 of the Code, not the amended section. Section 42–10, as previously noted, *see supra* note 6, requires persons to obtain permits before building any structures on their premises. The only mention of the amended code provision in this second Notice is that plaintiffs had to either remove the three structures or comply with the requirements of 113–21C by obtaining site plan approval for them. It is therefore doubtful whether we could declare the second part of the statute void, assuming we were so inclined, because there has been no suggestion that this provision has been enforced by the Town against these plaintiffs or that plaintiffs have applied for and been denied site plan approval in connection with this section. This issue has not been briefed by the parties, however, even though defendants seem to recognize it as a potential problem. At this point we need not resolve this question, but it is clearly one which must be addressed in the future.

Notwithstanding those concerns, the Town is clearly seeking compliance with the section of the code which requires site

---

**11.** Although defendants' Notice of Motion suggests we should abstain on all causes of action, assuming of course that we have not otherwise dismissed them, they have only briefed this abstention argument with respect to the tax claim.

**12.** The claims regarding the amendment are raised in the first and fifth causes of action.

plan approval, followed by the retention of a building permit pursuant to section 42–10, before a structure can be built. As to this amended section, the Town Board members claim they are entitled to absolute immunity for their actions taken as legislators. Both parties recognize that neither the Supreme Court nor the Court of Appeals for the Second Circuit has definitively resolved whether local legislators are absolutely immune for actions taken in their legislative capacity. Nonetheless, defendants claim that the same reasons for granting such immunity to federal and state legislators apply in the case of local legislators. Moreover, they cite numerous appellate authorities from other circuits, as well as district court authority from this circuit, recognizing such immunity. Finally, they cite a Supreme Court decision which, while not going as far as defendants propose herein, extended the doctrine to unelected regional officials performing legislative functions. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 406, 99 S.Ct. 1171, 1179, 59 L.Ed.2d 401 (1979).

We need not resolve this issue at the present time. Even if we were to recognize the validity of the doctrine as applied to members of a local town board, such immunity is expressly limited to "legislative" acts. Based on the pleadings before us, we cannot determine if the Town Board members were acting solely in a legislative capacity, as opposed to an executive one, when adopting this piece of legislation. Even courts recognizing such absolute immunity for local legislators state that "the recognition of immunity is not so broad as to shield local legislators when they are functioning in other than a traditional legislative capacity." *Goldberg v. Village of Spring Valley,* 538 F.Supp. 646, 649 (S.D.N.Y.1982). Defendants state conclusively that since the board members adopted legislation, they must have been

acting in a legislative capacity. However, with a local board it is often difficult to differentiate between legislative and executive action and "the scope of immunity depends on the nature of the activity involved." *Haskell v. Washington Township,* 864 F.2d 1266, 1278 (6th Cir.1988). Courts have recognized that local legislative immunity may be lost if the actions taken impact on particular individuals, rather than on a community generally, or if the factors considered in adopting the legislation relate to specific individuals, instead of general policy implications. *See Cutting v. Muzzey,* 724 F.2d 259, 261 (1st Cir.1984). Absolute immunity will also be lost if the legislators go beyond the mere adoption of legislation and venture into the area of enforcement. *Scott v. Greenville County,* 716 F.2d 1409, 1423 (4th Cir.1983).

We cannot presently determine whether the Town Board members' actions were solely legislative. Taking plaintiffs' allegations as true, as we are required to do on such a motion, defendants may lose their immunity if, in fact, their actions will only affect plaintiffs, notwithstanding the arguably neutral language of the statute. In addition, if the only considerations made before adopting the statute were whether they could stop plaintiffs from continuing their practices, defendants may also lose their absolute immunity.[13] Finally, if, as plaintiffs allege, the Town Board members engaged in enforcement efforts in conjunction with the Town Attorney and the Building Inspector, absolute immunity may again be forfeited. It is simply impossible for us to determine at this stage whether the individual members of the Town Board are absolutely immune from liability based on the passage of the amended code section.

Alternatively, defendants suggest that the board members are entitled to qualified immunity on the claims regarding the Code amendment. While it is true that

**13.** Since we are looking at a motion to dismiss, our inquiry is limited to a review of the pleadings. However, we note that the Town Attorney, defendant James J. Sullivan, has suggested that the impetus behind the Code's amendment was the extensive physical changes to the land

that plaintiffs were making. Affidavit of James J. Sullivan ¶ 11. Evidence of this nature may be precisely the type which prevents the application of absolute legislative immunity in this context.

if we conclude that defendants are not entitled to absolute immunity, they may be absolved from liability by virtue of the qualified immunity doctrine, we cannot determine that question at this point either. Questions of qualified immunity are inherently fact specific, *see Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir.1989), and at this time we cannot determine whether defendants are entitled to qualified immunity, even though this is an issue for the court pending evidentiary hearing. *See Warren v. Dwyer*, 906 F.2d 70 (2d Cir.1990).

 Defendants also claim that the statute does not violate plaintiffs' first amendment rights since it applies to all non-residential uses in residential areas and, moreover, it is necessary to achieve a compelling governmental interest. Once again, if plaintiffs' allegations are proved, they may be able to establish a first amendment violation. For example, plaintiffs argue that it is unreasonable for non-residential property owners to be restricted in their activities while residential owners living adjacent to them are not.[14] We must reach a different conclusion, however, with respect to defendants' motion to dismiss plaintiffs' fourteenth amendment due process claim. Plaintiffs conclusively allege that the amended code section amounts to an unconstitutional deprivation of their property rights without due process. However, the complaint fails to adequately allege how plaintiffs have been deprived of any property rights. There is no allegation suggesting that plaintiffs applied for and were denied site plan approval. All plaintiffs do is make a conclusive statement that they have been deprived of their property without suggesting what they have been deprived of. Therefore, we must dismiss

plaintiffs' fifth cause of action to the extent it alleges a due process violation.

### 2. Building Code Violations

Defendants have also moved to dismiss plaintiffs' second cause of action, which charges defendant Sullivan, as Town Attorney, and the individual members of the Town Board, as well as the Town itself, with discriminatorily issuing the two Notices of Violation previously referred to. Specifically, plaintiffs allege that on numerous occasions the Building Inspector was ordered to visit their property to find building code violations and, even when he found nothing, he was sent back again until he found a violation. Moreover, the Building Inspector had allegedly been aware of the existence of the structures to which the Notices of Violation were addressed for a substantial period of time prior to issuing them. Defendants claim that the Town Attorney and the individual board members are immune from suit based on the issuance of these Notices under the doctrine of prosecutorial immunity.

 This doctrine recognizes absolute immunity for prosecutors when acting in a prosecutorial capacity. *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976). Absolute immunity will only attach if two criteria are satisfied: "the conduct must be colorably prosecutorial in nature and it must not be undertaken in the clear absence of jurisdiction." *Rudow v. City of New York*, 822 F.2d 324, 328 (2d Cir.1987). This is not merely a mechanical test to be applied, however, and we must look at the activities the individual engages in, not simply his or

---

**14.** After argument of the pending motions, the Supreme Court rendered its most recent decision on the first amendment's free exercise clause. In *Employment Division, Department of Human Resources of Oregon v. Smith*, —— U.S. ——, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Court was presented with a first amendment challenge by members of a Native American Church who had been fired from their jobs and subsequently denied unemployment compensation because they ingested the hallucinogenic drug peyote. They claimed the drug was used for sacramental purposes. The Court concluded

that "if prohibiting the exercise of religion ... is ... merely the incidental effect of a generally applicable and otherwise valid provision, the First Amendment has not been offended." *Id.* at ——, 110 S.Ct. at 1598–1601. The Court further held that the "compelling interest" balancing test is not necessary "with an across-the-board criminal prohibition on a particular form of conduct." *Id.* at ——, 110 S.Ct. at 1603–1604. The extent to which this decision may impact on the issues presented in the case at bar is unclear, but need not be presently resolved.

her title, to determine if the actions were prosecutorial, and therefore subject to absolute immunity, or merely investigative or administrative activities, which are only entitled to qualified immunity. *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.1981).

█ In the case at bar, plaintiffs contend that the Town Attorney acted outside his authority and also that his actions were not prosecutorial in nature. Plaintiffs contend that it is the Building Inspector, not the Town Attorney, who is charged with enforcing zoning ordinances. In response, however, defendants contend that while the Building Inspector issues the Notices of Violation, the Town Attorney is charged with enforcing these charges if they are not abated and, moreover, that he is the legal advisor to town officials. However, plaintiffs are not claiming that the subsequent legal enforcement of the Notices, which is apparently the Town Attorney's responsibility, violated their rights, but rather, that the investigation and mere issuance of these Notices was unconstitutional. If, as plaintiffs allege, the Town Attorney and Town Board members had a hand in issuing the Notices, they may have been acting without authority since this was within the Building Inspector's jurisdiction. Moreover, even assuming the Town Attorney and Town Board members acted within their authority, further factual development is needed to determine if they were acting in a prosecutorial capacity. Deliberately sending the Building Inspector to find violations, especially ones which allegedly had been known about and ignored for years, may transform prosecutorial actions into investigative or administrative ones, thereby emasculating the availability of prosecutorial immunity. Therefore, we must deny defendants' motion to dismiss the Town Attorney and Town Board members based on prosecutorial immunity.[15]

### 3. Tax Assessment

The Tax Injunction Act provides that:

The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341 (1988). The Supreme Court has also held that the Act "prohibits a district court from issuing a declaratory judgment holding state tax laws unconstitutional." *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982). "The statute 'has its roots in equity practice, in principles of federalism, and in recognition of the imperative need of a State to administer its own fiscal operations.'" *Rosewell v. La-Salle Nat'l Bank*, 450 U.S. 503, 522, 101 S.Ct. 1221, 1233, 67 L.Ed.2d 464 (1981) (quoting *Tully v. Griffin, Inc.*, 429 U.S. 68, 73, 97 S.Ct. 219, 222, 50 L.Ed.2d 227 (1976)).

█ In the case at bar, defendants contend that plaintiffs third cause of action implicitly seeks declaratory and injunctive relief prohibiting the Town from collecting the tax based on the new assessment. Plaintiffs, however, contend that they are not seeking to enjoin or restrain the collection of any tax, but rather, are seeking damages for the discriminatory practices engaged in by defendants, including the allegedly unconstitutional means employed by defendants in assessing the tax.

We are not disposed to read the Complaint as narrowly as plaintiffs request. The third cause of action states that the actions of the Tax Assessor and the Town Attorney violated the first and fourteenth amendments and plaintiffs' "prayer for relief" seeks a declaration that defendants' conduct violated these amendments. In addition, plaintiffs' "prayer for relief" seeks an injunction preventing defendants from discriminatorily evaluating plaintiffs' application for tax exempt status. Plaintiffs argue, however, that this demand does not seek an injunction preventing the collection of any tax. Were this the case, a party could avoid the true import behind the Act

---

**15.** If there is no absolute prosecutorial immunity available, the Town Attorney and Town Board members may be entitled to qualified immunity. As previously noted, however, this inquiry is inherently fact specific and cannot be resolved at this stage.

by artfully pleading its complaint so as to avoid expressly seeking an injunction from the collection of a tax. Instead, the party could, as plaintiffs have done, limit the relief sought to an injunction against discriminatory methods of assessing taxes. However, since a court would not issue such an injunction without initially making some determination as to the propriety of the defendants' actions, there exists the possibility that a federal court could enjoin a party from continuing to determine another's tax exempt status in a discriminatory fashion, and yet the Tax Injunction Act would prevent that same court from enjoining the collection of taxes previously assessed by such unconstitutional means. Plaintiffs are clearly seeking more than they admit to.

■ While we are convinced the Tax Injunction Act applies in this case, we would be required to dismiss even on plaintiffs' characterization of the Complaint. As noted, plaintiffs claim that this cause of action is based solely on the Civil Rights Act, which establishes the right to relief for constitutional violations by a state. Plaintiffs claim that defendants have discriminated against them and that one of discriminatory acts was the attempt to collect this tax. The Supreme Court has stated, however, that in a damage action pursuant section 1983 alleging that in administering a tax the state has violated a party's constitutional rights, principles of comity require the federal court to dismiss the claim. *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 116, 102 S.Ct. 177, 186, 70 L.Ed.2d 271 (1981). In *Fair Assessment*, petitioners sought damages under section 1983, claiming that the County Tax Assessors, among others, violated their due process and equal protection rights by discriminatorily assessing their property values. The Supreme Court, after discussing the policies behind the Tax Injunction Act and the Civil Rights Act, determined that even though the Tax Injunction Act *per se* was inapplicable be-

cause injunctive or declaratory relief was not being sought, principles of comity prevent taxpayers "from asserting § 1983 actions against the validity of state tax systems in federal court." *Id.* The Court relied, in part, on the fact that before a court can grant damages under section 1983, there must be a determination that some constitutional right has been violated. More specifically, there must be a conclusion that the "administration of the ... tax system violated [plaintiffs'] constitutional rights." *Id.* at 113, 102 S.Ct. at 184. This, the Court recognized, essentially would result in the issuance of a declaratory judgment on the issue, which, as we have previously noted, has been interpreted to be violative of the Tax Injunction Act. *Id.*

■ Before we can dismiss this claim, however, we must determine if plaintiffs have a "plain, adequate and complete" remedy available in state court. *Id.* at 116, 102 S.Ct. at 186.[16] There is no question but that the remedies available in the New York state courts are sufficient to protect plaintiffs' rights. The test is whether a state will provide a " 'full hearing and judicial determination at which [a taxpayer] may raise any and all constitutional objections to the tax.' " *Long Island Lighting Co. v. Town of Brookhaven*, 889 F.2d 428, 431 (2d Cir.1989) (quoting *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 514, 515 n. 19, 101 S.Ct. 1221, 1230 n. 19, 67 L.Ed.2d 464 (1981)). The Second Circuit has recognized that both a declaratory judgment action or an action pursuant to section 1983 can be instituted in state court and either will adequately protect a taxpayer's rights. *Id.* at 431–32. In fact, as we have previously noted, plaintiffs have already instituted a declaratory judgment action in the Supreme Court of the State of New York, County of Westchester, on this tax issue. All that would be necessary is for plaintiffs to amend their complaint in that action to include the claims made in this action, assuming they have not already done so.

---

**16.** The Supreme Court in *Fair Assessment* applied this test when the dismissal was based on principles of comity, but recognized that there is no significant practical difference between this test and the Tax Injunction Act's requirement of a "plain, speedy and efficient" remedy. *Fair Assessment,* 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8.

Therefore, plaintiffs' third cause of action is dismissed as is any claim for relief, declaratory, injunctive, compensatory, or punitive, based on the tax assessment and the procedures utilized for determining this assessment. Since Sol Horne, the Town Tax Assessor, does not appear to have been sued on any other causes of action, he is dismissed from this action as well.[17]

### B. *Motion for Class Certification*

Having disposed of defendants' motion to dismiss, we now turn to plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. The class plaintiffs seek to certify includes the fifty-four present members of the Wellspring Zendo (the "Zendo"), which is located in Pound Ridge, as well as any future members of the Zendo. Plaintiffs claim that the four named plaintiffs, Wendy Moore, President of Wellspring Zendo, Inc., James Best, Vice–President, Ellen Best, Secretary/Treasurer, and Catherine Byrne, Vice–President, can adequately represent this class.

Federal Rule of Civil Procedure 23(a) mandates that certain prerequisites be satisfied before certification will be considered. These requirements are those of numerosity, commonality, typicality, and adequacy of representation. Fed.R.Civ.P. 23(a). With respect to the first requirement, that "the class be so numerous that joinder of all members is impracticable," Fed.R.Civ.P. 23(a)(1), plaintiffs claim that besides the fifty-four present members, unnamed individuals who may join the Zendo in the future should be part of the class. Moreover, plaintiffs claim that joinder is impracticable since the members reside throughout the Metropolitan New York area and it would be financially difficult for them to maintain separate actions.

 We disagree with plaintiffs' contentions. Although classes of less than fifty-four have certainly been certified, there appears to be little difficulty in joining all the members of the Zendo in this one action. First of all, all the members of the Zendo are clearly known since plaintiffs' counsel has presented us with a list of the members' names. Moreover, while the members do not all reside in the same state, they all live in the Metropolitan New York area. Even more telling, however, are the very stringent regulations established for membership in the Zendo, which require members to spend some time at the Zendo itself.[18] It would not be impracticable to join members whose interests are similar in the instant action. The extent to which future members of the Zendo might be affected by the Judgment in this action does not change our conclusion. To the extent equitable relief is sought, it will inure to the benefit of all present and future members of the Zendo. As to damage relief, we do not see how any future members of the Zendo can claim entitlement to damages resulting from actions taken by defendants prior to their becoming members of the Zendo.

 We also note that the requirement that "the representative parties will fairly and adequately protect the interests of the class," Fed.R.Civ.P. 23(a)(4), is also not satisfied. The purported class representatives are officers of Wellspring Zendo, Inc., in addition to being members of the Zendo. Their interests may be different than those of individuals who are merely members of the Zendo and would be seeking damages only for themselves, rather than for the corporation.

Therefore, plaintiffs' motion for class certification is denied.

### III. CONCLUSION

Defendants' motion to dismiss is granted only to the extent that it seeks dismissal of count three regarding the tax assessment

---

17. The Town Attorney, James J. Sullivan, was also named in this cause of action, but will remain in this action since he has been sued on other claims.

18. The papers before us do not indicate which, if any, of the members reside primarily at the Zendo, although it appears that some of them may be there as little as one week per year, in addition to selective weekends. We cannot therefore determine whether the interests of the named plaintiffs are typical of the proposed class.

and count five to the extent it alleges a deprivation of property without due process by virtue of the amendment to the Code. In all other respects the motion is denied. In turn, plaintiffs' motion for class certification is denied. As indicated in footnote 11 above, we have not been asked to consider abstention in favor of the state actions, and decline to do so *sua sponte*.

SO ORDERED.